Debra L. Spinelli, Esq., Bar No. 9695
DLS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Tel: 702-214-2100
Fax: 702-214-2101

Gregg LoCascio (pro hac vice admitted)
Justin Bova (pro hac vice admitted)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202-389-5000
Fax: 202-389-5200
gregg.locascio@kirkland.com
justin.bova@kirkland.com

Ryan Kane (pro hac vice admitted)
Andrew Walter (pro hac vice admitted)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: 212-446-4800
Fax: 212-446-4900
ryan.kane@kirkland.com
andrew.walter@kirkland.com

*Counsel for Plaintiff*
*Pacira Pharmaceuticals, Inc.*

Karen A. Peterson, Esq.,
Nevada State Bar No. 366
ALLISON MacKENZIE, LTD.
402 North Division Street
Carson City, Nevada 89703
(775) 687.0202
kpeterson@allisonmackenzie.com

Daniel S. Leventhal (admitted pro hac vice)
Jaime Stark (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
(713) 651-5151
daniel.leventhal@nortonrosefulbright.com
jaime.stark@nortonrosefulbright.com

James S. Renard (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
(214) 855-8000
james.renard@nortonrosefulbright.com

Zachary Wegmann (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701-4255
(512) 474-5201
zachary.wegmann@nortonrosefulbright.com

*Attorneys for Defendant Research Development Foundation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PACIRA PHARMACEUTICALS, INC.<br><br>Plaintiff,<br><br>v.<br><br>RESEARCH DEVELOPMENT FOUNDATION,<br><br>Defendant | CASE NO. 2:21-cv-02241-RFB-DJA<br><br>**STIPULATION AND ORDER GOVERNING DISCOVERY AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION**<br><br>**As amended on page 5** |

Plaintiff Pacira Pharmaceuticals, Inc. ("Pacira") and Defendant Research Development Foundation ("RDF"), by and through their undersigned counsel of record, hereby enter into this

Stipulation and Order Governing Discovery and Production of Electronically Stored Information ("Protocol"). Pacira and RDF are collectively referred to as the "Parties" in this Stipulation and individually as "Party."

The Parties agree that good cause exists to create a protocol to govern the production of documents and Electronically Stored Information, and stipulate and agree to the entry of this Protocol to govern the production of electronically stored information ("ESI") and ensure efficient production of documents during the pendency of this case, as follows:

1. This order supplements all other discovery rules and orders. It is intended to streamline production of Electronically Stored Information ("ESI") to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.

2. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

3. Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

**A.** **General Document Image Format**. Each electronic document shall be produced in single-page Tagged Image File Format ("TIFF") format or JPEG for color documents. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

**B.** **Metadata.** Load files should include, where applicable, the information listed in the below table. However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original, with the exception of the following:

BegBates, EndBates, BegAttach, EndAttach, Confidentiality, Redacted and All Custodians(s). Nothing in this Order shall be construed as a requirement that a party create metadata for documents that do not contain metadata in the original.

| | |
|---|---|
| BegBates | The document ID number for the first page of the document. |
| EndBates | The document ID number for the last page of the document. |
| BegAttach | The document ID number for the first page of the parent document. |
| EndAttach | The document ID number for the last page of the last attachment to the parent document. |
| Confidentiality | The confidentiality designation for the document |
| Redacted | Yes/No indication of whether redactions were applied |
| Author(s) | If available, the person(s) who created, wrote, reviewed, signed, or approved the document. If no author is present, a default value of "None" will be coded. |
| FROM | Sender of email message. |
| TO | Recipient of email message in the "To" field. |
| CC | Recipient of email message in the "CC" field. |
| BCC | Recipient of email message in the "BCC" field. |
| SUBJECT | Subject of email message in the "Subject" field. |
| Date Created | Date the document was created. |
| Date Modified | Date the document was last modified. |
| Sent Date | Date email message was sent. |
| Received Date | Date email message was received. |
| Time Received | Time email was received. |
| All Custodians(s) | Custodial source(s) that possessed the document. |
| File Name | Original file name. |
| Document Type | The file extension describing the type of document. |

C.   **Text-Searchable Documents.** Full extracted text will be provided for all file types, including but not limited to (1) any scanned documents, (2) any text of embedded content. For any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided or where redactions have been applied to the document, text shall be generated using industry standard OCR technology. Running OCR technology over redacted documents ensures that the redacted text is not provided in the text file. Text shall be provided in document-level *.txt files named to match the production number of the first page of the document to which the text corresponds (i.e., a

single text file per document, rather than a single text file per page). Text should not be delivered in the data load file or any other delimited text file.

D. **Footer**. Each document image shall contain a footer with a sequentially ascending production number and a confidentiality designation, if applicable.

E. **Native Files**. Notwithstanding the above, to the extent a producing party produces video, animation, audio files, or Excel files, such documents shall be produced in their native format. The producing party will produce a slipsheet in TIFF format corresponding to the document in native format. OLE embedded files shall not be extracted as separate documents and shall not be produced.[1] In addition, a party that receives a document produced in TIFF format may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

F. **No Backup Restoration Required**. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

G. **Voicemail and Mobile Devices**. Absent a showing of good cause, voicemails, PDAs, and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

4. **Email Production Requests**. General ESI production requests under Rules 34 of the Federal Rules of Civil Procedure, or compliance with a mandatory disclosure order of this Court, shall

---

[1] For purposes of this Order, attachments to emails are not considered embedded files.

not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests.[2]

    a. Email production requests shall be phased to occur timely after the parties have exchanged (1) initial disclosures, (2) a specific listing of likely email custodians, and (3) a specific identification of the ten (10) most significant listed email custodians in view of the pleaded claims and defenses.[3] The exchange of the information specified in items (2) and (3) shall occur on May 20, 2022. ~~The~~ Court A party may move the for ~~may allow~~ additional discovery upon a showing of good cause.

    b. Email production requests shall identify the custodian, search terms, and time frame. As described below, the parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its email production requests to a total of five (5) custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. A party may move the Court to ~~The Court shall~~ consider contested requests for additional or fewer custodians per producing party, upon a showing of a distinct need based on the size, complexity, and issues of this specific case.

    c. Each requesting party shall limit its email production requests to a total of ten (10) search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. Subject to paragraph 4(d), a party may move the Court to ~~the Court shall~~ consider contested requests for additional or fewer search terms per custodian, upon a

---

[2] As used in paragraph 4, "party" shall be interpreted as "side."

[3] A "specific identification" requires a short description of why the custodian is believed to be significant. To the extent a party identifies less than 10 likely e-mail custodians, the party shall disclose all identified likely e-mail custodians.

5

showing of a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues.

    d. An email production request that results in more than 400 hits inclusive of family members for a given search term for a single custodian shall be presumed unreasonable. Absent party agreement, the party propounding that email production request will have the burden to prove to the Court that the request is proper. A "hit" is defined as a document matching a search term plus all of that document's family members (e.g., an email plus its attachments); for example, if a search term matches one email that has two attachments, that counts as three hits regardless of whether the attachments also contain the search term.

    e. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless the words or phrases are variants of the same word or phrase. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

    f. It is expected that the parties will meet and confer and iterate on search terms to arrive at a set of email production requests that generate no more than 400 hits per search term, per custodian and no more than 4,000 cumulative hits per custodian. During each iteration, the party to whom an email production request is directed

6

      must provide hit counts for each search term and accept or object on a search term-by-search term basis.  Disclosure of these hit counts will not result in waiver of any privileged subject matter.  The parties agree that, if a given search term returns more than 400 hits, that does not necessarily indicate that all of the hit-upon documents are relevant.  The parties will not argue that a hit count of more than 400 hits for a proposed search term "proves" the appropriateness of the search term.

g. The parties agree that for email production requests the final search results from the final search terms (i.e., the results produced by a search that meets the criteria described in 4(c)-(f) above) will be reviewed for privilege.  To the extent an e-mail repository is used by a custodian both in the custodian performing the custodian's duties for a party and for other purposes, only e-mails related to the custodian performing the custodian's duties for the party are discoverable.[4]

h. Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the Parties need not also produce lesser-included emails in the thread.

i. Third parties, including recipients of a Rule 45 subpoena seeking e-mails, may elect at their sole discretion to be bound to the procedures above concerning the

---

[4] For the avoidance of doubt, for RDF this shall include, but is not limited to, e-mail related to Pacira, DepoTech, SkyePharma, and/or the Agreements at issue.

production of email for ESI requests made under Rule 45 of the Federal Rules of Civil Procedure, and such election will satisfy their obligations for the production of email under Rule 45.

5. All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above. Multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically or physically unitized). A commercially acceptable technology for OCR shall be used for all scanned documents. OCR data is to be included as separate text files that are linked by a .dat file. If a document contains redactions, the OCR data shall not include the redacted portions of the document but shall include the remaining unredacted text.

6. **Color/High Resolution Documents.** Presentation files (including Microsoft PowerPoint files) and documents containing track changes shall be produced in color. Additionally, the parties agree to respond to reasonable and specific requests for production of higher resolution or color images. Nothing in this Order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope. If a document is originally produced in an illegible or difficult to read form, the producing party shall have the option of responding by producing a native-file version of the document or producing a replacement image of legible quality. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

7. **Avoidance of Duplicate Production.** "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same

Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the "All Custodians" field identified in the Table in ¶ 3B.

8. **Production Media.** Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

   a. Name of the Litigation and its case number;

   b. Name of the producing Party;

   c. Date of the production (mm/dd/yyyy);

   d. Volume number;

   e. Bates Number range;

   f. Confidentiality Designation; and

   g. Notes regarding any irregularities in the production (e.g., whether it is replacement Production Media (see below)).

9. **Production Media (FTP Sites).** Producing Parties may elect to produce initially via an FTP site for production volumes equal to or less than 100 GB on the due date of the production. Production volumes of a larger size than 100 GB may be produced by FTP in the process described above only upon prior agreement of the Requesting Parties. Any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced. Producing Parties may encrypt their Production Media and, if so, shall provide a key to decrypt the Production Media in a separate communication.

10. **Time.** When processing ESI for review and for production in TIFF format, the Producing Party will instruct its vendor to turn off any automatic date stamping. When processing ESI, GMT should be selected as the time zone. To the extent that a Party has already processed ESI using a different time zone, the Producing Party will note the time zone used in its processing. In such instance, a Party may consistently produce all ESI processed using the same time zone. When a metadata field includes a date and/or time, it shall be provided in the following format: mm/dd/yyyy HH:mm:ss.

11. **Redactions.** To the extent that a responsive document contains (a) privileged content, (b) personally identifiable information, (c) other personal or financially sensitive information that is protected by US or foreign data protection laws, or (d) information that is CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY (as those terms are defined in the Protective Order) and the document is being produced at a lower confidentiality designation, the Producing Party may produce that document in a redacted form. Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "REDACTED – PRIVILEGED" or "REDACTED – DP INFORMATION" or "REDACTED – CONFIDENTIAL" or "REDACTED – HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document as redacted. Nothing in this paragraph is intended to allow a Party to withhold CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information; to the extent a document is produced with CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY redactions, a copy of the document with the CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY material without redaction must be also produced with a proper

confidentiality designation. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph.

12. **Privileged Documents That Need Not Be Logged.** The Parties agree that the following privileged documents and electronically stored information ("privileged material") need not be logged or indexed:

    a. privileged material dated on or after December 23, 2021;

    b. documents partially redacted for privilege where the basis for privilege is apparent from the context of the unredacted portions of the document. If a Requesting Party disputes whether the basis for privilege is apparent from the context of the unredacted portions of the document, then it shall raise the issue as to the document with the Producing Party in writing with reasonably sufficient detail so that the Producing Party may understand the Requesting Party's complaint. Within five (5) business days, the Producing Party shall either provide a privilege log entry for the document or otherwise respond in writing. If the response does not satisfy the Requesting Party, then the Parties shall meet and confer, and if the dispute cannot be resolved, then the Requesting Party may seek relief from the Court. Nothing in this procedure to challenge a Party's privilege log modifies the Producing Party's burden to establish the privileged nature of the withheld document.

13. **Preservation of Privileged Materials.** Notwithstanding the above stipulation, all privileged material should be preserved in the event of a later dispute with respect to the propriety of any privilege claim or the sufficiency of the privilege log. The Parties agree that they will confer at a later time to determine whether any other categories of privileged documents can be excluded from the logging requirement.

14. **Format of Privilege Log.**  The privilege log shall be produced as an Excel Spreadsheet.

15. **Contents of Privilege Log.**  Documents withheld from production that a Party believes are covered by an attorney-client privilege and/or work product protection, which are not specifically excluded above, should be logged on a privilege log on a document-by-document basis, except as identified below.  Consistent with Fed. R. Civ. P. 26(b)(5), the following information should be provided (as applicable) in the privilege log for each document: (1) unique document identification number; (2) document type; (3) family relationship; (4) date; (5) author; (6) each recipient; (7) copies(s); (8) privilege or protection claimed; and (9) description of the subject matter of the document or electronically stored information sufficient to enable the requesting party to assess the validity of the privilege claim.

16. **Email Strings.**  For those documents that contain a series of e-mail communications in a single document ("email string") where each individual e-mail communication includes a lawyer, it shall be sufficient to log the "email string" without separate logging of each included communication, but reference to the document as an "email string" should be made in the document description field of the log; every individual author and recipient in the email string withheld as privileged will be identified; the entire date range for the string of emails will be identified; and the description provided should be sufficient to enable the requesting party to assess the claim of privilege.  Email strings that are not privileged in their entirety should be redacted, the redaction labeled to reflect the nature of the privileged and the non-privileged portions produced.  Parties retain the right to request individual emails be logged as individual entries if necessary to properly assess the privilege claim for any individual email in the string or the entire string.

17. **Identification of Counsel.**  All counsel or their employees (or direct reports for in-house counsel) involved in purportedly privileged communications or work product shall be identified as such in the privilege log.

18. **Challenges to Privilege Log.** If a Requesting Party believes in good faith that one or more items in a Producing Party's privilege log should be produced and are inappropriately being withheld, then it shall raise the issue as to each log entry with the Producing Party in writing with reasonably sufficient detail so that the Producing Party may understand the Requesting Party's complaint. Within five (5) business days, the Producing Party shall respond in writing. If the response does not satisfy the Requesting Party, then the Parties shall meet and confer and if the dispute as to the privileged nature of the material cannot be resolved, then the Requesting Party may seek relief from the Court as to the specific log entries raised with the Producing Party. Nothing in this procedure to challenge a Party's privilege log modifies the Producing Party's burden to establish the privileged nature of the withheld document.

19. The inadvertent or otherwise production of privileged or work-product protected documents, ESI or information is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

20. The mere production of documents or ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

21. **No Waiver of Rights Regarding Review.** By entering this Order, a Party is not giving up its right to review its documents for privilege and the existence of this Order cannot be used to compel a Party to produce documents without review.

22. Except as expressly stated, nothing in this Order affects the parties' discovery obligations under the Federal Rules or Local Rules.

| | |
|---|---|
| DATED this 6th day of May, 2022. | DATED this 6th day of May, 2022. |
| PISANELLI BICE PLLC | ALLISON MacKENZIE, LTD. |
| By: */s/ Debra L. Spinelli* <br>     Debra L. Spinelli, Esq., #9695 <br>     400 South 7th Street, Suite 30 <br>     Las Vegas, Nevada 89101 <br><br>     Gregg F. LoCascio, P.C. (pro hac vice) <br>     Justin Bova, Esq. (pro hac vice) <br>     KIRKLAND & ELLIS LLP <br>     1301 Pennsylvania Avenue, N.W. <br>     Washington, D.C. 20004 <br><br>     Ryan P. Kane, Esq. (pro hac vice) <br>     Andrew B. Walter, Esq. (pro hac vice) <br>     KIRKLAND & ELLIS LLP <br>     601 Lexington Avenue <br>     New York, New York 10022 <br><br> *Counsel for Plaintiff* <br> *Pacira Pharmaceuticals, Inc.* | By: */s/ Daniel S. Leventhal* <br>     Karen A. Peterson, Esq., Bar No. 366 <br>     402 North Division Street <br>     Carson City, Nevada 89703 <br><br>     Daniel S. Leventhal, Esq. <br>     Jaime Stark, Esq. <br>     NORTON ROSE FULBRIGHT US LLP <br>     1301 McKinney, Suite 5100 <br><br>     James S. Renard, Esq. <br>     NORTON ROSE FULBRIGHT US LLP <br>     2200 Ross Avenue, Suite 3600 <br>     Dallas, TX 75201-7932 <br><br>     Zachary Wegmann, Esq. <br>     NORTON ROSE FULBRIGHT US LLP <br>     98 San Jacinto Boulevard, Suite 1100 <br>     Austin, TX 78701-4255 <br><br> *Attorneys for Defendant Research Development Foundation* |

**IT IS SO ORDERED.**

**ORDER**

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE
DATED: May 20, 2022

CASE NO.: 2:21-CV-02241-RFB-DJA