KAREN A. PETERSON, ESQ.
Nevada State Bar No. 366
**ALLISON MacKENZIE, LTD.**
402 North Division Street
Carson City, NV  89703
Telephone:  (775) 687-0202
Email: kpeterson@allisonmackenzie.com

DANIEL SCOTT LEVENTHAL, ESQ. (admitted pro hac vice)
JAIME STARK, ESQ. (admitted pro hac vice)
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone: (713) 651-5151
Email: daniel.leventhal@nortonrosefulbright.com
Email: jaime.stark@nortonrosefulbright.com

JAMES S. RENARD, ESQ. (admitted pro hac vice)
BRANDY S. NOLAN, ESQ. (admitted pro hac vice)
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
Telephone: (214) 855-8000
Email: james.renard@nortonrosefulbright.com
Email: brandy.nolan@nortonrosefulbright.com

TALBOT R. HANSUM, ESQ. (admitted pro hac vice)
ZACHARY WEGMANN, ESQ. (admitted pro hac vice)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, TX  78701-4255
Telephone: (512) 474-5201
Email: talbot.hansum@nortonrosefulbright.com
Email: zachary.wegmann@nortonrosefulbright.com

Attorneys for Defendant,
RESEARCH DEVELOPMENT FOUNDATION

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

PACIRA PHARMACEUTICALS, INC.,

        Plaintiff,

        vs.

RESEARCH DEVELOPMENT
FOUNDATION,

        Defendant.

_____/

Case No. 2:21-cv-02241-CDS-DJA

**DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ON
PLAINTIFF'S CLAIMS**

**ORAL ARGUMENT REQUESTED**

1

2

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF MATERIAL FACTS ............................................................ 3

    A.  RDF and the Clayton Entities Partnered With Pacira to Bring
        Multivesicular Liposome (MVL) Technology to the Public.................... 3

    B.  The Parties Resolved a Dispute Over Covered Technology Through Their
        2004 Amendment That Explicitly Includes All Of Pacira's Future MVL
        Technology............................................................................................... 5

    C.  Background in Contracts Specifying Covered Patents and Non-Patent
        Proprietary Rights ................................................................................... 8

    D.  Pacira's Current MVL IP and Manufacture of EXPAREL.................... 9

    E.  Pacira's Litigation Position and Comparison to Past Conduct ............ 11

III. ARGUMENT .................................................................................................... 12

    A.  The Agreements Cover Pacira's Sales of EXPAREL Under Article 1.4 of
        the 2004 Amendment Because The '495 Patent is Assigned Proprietary
        Property ................................................................................................. 12

        1.  Pacira's Raises Only A Contract Interpretation Argument To Assert
            That Its Ongoing Sales of EXPAREL Are Not Within The
            Agreements ................................................................................. 12

        2.  Pacira's Interpretation Of Article 1.4 As Excluding Future Patents
            Is Not Reasonable And Is Contrary To The Extrinsic Record ......... 13

    B.  The Agreements Cover Pacira's Sales Of EXPAREL Under Section 3.8 Of
        The 1994 Agreement Because The '495 Patent Is Assigned Proprietary
        Property ................................................................................................. 18

        1.  Section 3.8 States That Pacira's Future Patents Related To The
            Same Field of Technology Of Existing Assigned Proprietary
            Property "Shall Be Included In The Assigned Proprietary Property"....... 18

        2.  The '495 Patent Relates To The Same Field of Technology As
            Other Patents That Are Indisputably Part of Assigned Proprietary
            Property ....................................................................................... 22

    C.  The Agreements Cover Pacira's Sales of EXPAREL Under Article 1.1 of
        the 2004 Amendment Because Pacira Uses Non-Patent Proprietary
        Property in Manufacturing EXPAREL .................................................. 23

        1.  The plain language of Article 1.1 confirms "Gross Revenue"
            includes revenues from Pacira's "use" of non-patent proprietary
            property ....................................................................................... 23

        2.  Pacira's own witnesses and documents demonstrate that Pacira uses
            non-patent proprietary property in manufacturing EXPAREL................. 25

    D.  RDF is Entitled to Summary Judgment on Pacira's Equitable Claims................. 27

IV.  CONCLUSION ................................................................................................. 30

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

*Acosta v. Master Maintenance and Const. Inc.*,
452 F.3d 373 (5th Cir. 2006)..................................................................... 19

*AgroFresh Inc. v. MirTech, Inc.*,
257 F. Supp. 3d 643 (D. Del. 2017) ......................................................... 19

*Am. First Fed. Credit Union v. Soro*,
131 Nev. 737, 359 P.3d 105 (2015) ........................... 14, 15, 17, 20, 28

*Assn. Services of Wash., Inc. v. Western Metal Industry*,
563 F. Supp. 3d 1140 (W.D. Wash. 2021) ................................................ 19

*Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*,
339 U.S. 827 (1950) .................................................................................. 29

*Brulotte v. Thys Co.*,
379 U.S. 29 (1964) .............................................................................. 28, 29

*Burch v. Second Judicial Dist. Ct.*,
118 Nev. 438, 49 P.3d 647 (2002) ............................... 14, 17, 21, 28

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987)................................................................... 28

*D.R. Horton, Inc. v. Green*,
120 Nev. 549, 96 P.3d 1159 (Nev. 2004)................................................. 28

*Galardi v. Naples Polaris, LLC*,
129 Nev. 306, 301 P.3d 364 (2013) ......................................................... 15

*Kimble v. Marvel Entm't, LLC*,
576 U.S. 446 (2015) .................................................................................. 28

*Lowe Enters. Residential Ptnrs., L.P. v. Eighth Judicial Dist. Ct.*,
118 Nev. 92, 40 P.3d 405 (Nev. 2002)..................................................... 28

*Memory Integrity, LLC v. Intel Corp.*,
178 F. Supp. 3d 1022 (D. Ore. 2016)........................................................ 15

*Morales v.Trans World Airlines, Inc.*,
504 U.S. 374, 112 S.Ct. 2031 (1992)........................................................ 19

*Multimatic Inc. v. Faurecia Interior Sys. USA*,
358 Fed. Appx. 643 (6th Cir. 2009) .......................................................... 14

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

*NAD, Inc. v. Dist. Ct.*,
   115 Nev. 71, 976 P.2d 994 (Nev. 1999) ........................................................ 28

*Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*,
   137 Nev. 76, 482 P.3d 665 (2021) .............................................................. 15

*Pakootas v.Teck Cominco Metals, Ltd.*,
   905 F.3d 565 (9th Cir. 2018) .................................................................... 19

*Sanders v. Sodexo*,
   2015 U.S. Dist. LEXIS 96073 (D. Nev. July 20, 2015) ................................ 27

*Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*,
   587 F.3d 1375 (Fed. Cir. 2009) ................................................................ 19

**Rules and Statutes**

1 U.S.C. § 1 .......................................................................................... 14

35 U.S.C. § 154 ...................................................................................... 10

**Other Authorities**

American Heritage Dictionary of the English Language (4th Ed. 2000) ....................... 19

Black's Law Dictionary ................................................................................ 19

**TABLE OF EXHIBITS**

| Exhibit No. | Shorthand | Description | No. of Pages |
|---|---|---|---|
| 1 | 1994 Assignment | 1994.02.09 – Fully Executed Assignment Agreement (RDF_Pacira_00000118) | 31 |
| 2 | 2004 Amendment | 2004.04.15 – Fully Executed Amendment Agreement (RDF_Pacira_00000105) | 13 |
| 3 | '572 Patent | U.S. Patent No. 5,807,572 | 12 |
| 4 | '838 Patent | Excerpt of U.S. Patent No. 9,585,838 | 17 |
| 5 | '648 Patent | Excerpt of U.S. Patent No. 10,398,648 | 15 |
| 6 | '495 Patent | U.S. Patent No. 11,033,495 (PACIRA_DNV-00002066) | 21 |
| 7 | Michniak-Kohn Rep. | Declaration of Michniak-Kohn incorporating Excerpt of 2022.09.23 Michniak-Kohn Expert Report | 47 |
| 8 | Stevens Rep. | Declaration of Stevens incorporating Excerpt of 2022.09.23 Stevens Expert Report | 27 |
| 9 | Ho Opening Rep. | Excerpt of 2022.09.23 Ho Opening Expert Report | 4 |
| 10 | Ho Rebuttal Rep. | Excerpt of 2022.10.26 Ho Rebuttal Expert Report | 5 |
| 11 | Edwards Rep. | Excerpt of 2022.10.26 Edwards Rebuttal Expert Report | 3 |
| 12 | Michniak-Kohn Dep. | Excerpt of 2023.01.30 Michniak-Kohn Deposition | 7 |
| 13 | Ho Dep. | Excerpt of 2023.01.05 Ho Deposition | 7 |
| 14 | Edwards Dep. | Excerpt of 2023.01.26 Edwards Deposition | 5 |
| 15 | Brorby Dep. Vol. I | Excerpt of 2022.11.30 Brorby Deposition Volume I | 13 |
| 16 | Brorby Dep. Vol. II | Excerpt of 2022.12.01 Brorby Deposition Volume II | 7 |
| 17 | Crozier Dep. Vol. I | Excerpt of 2022.11.22 Crozier Deposition Volume I | 4 |
| 18 | Crozier Dep. Vol. II | Excerpt of 2023.01.04 Crozier Deposition Volume II | 3 |
| 19 | Los Dep. | Excerpt of 2023.01.10 Los Deposition | 6 |
| 20 | Molloy Dep. | Excerpt of 2023.01.20 Molloy Deposition | 5 |
| 21 | Nicholson Dep. | Excerpt of 2022.12.15 Nicholson Deposition | 7 |
| 22 | Stack Dep. | Excerpt of 2022.12.05 Stack Deposition | 8 |
| 23 | Turnbull Dep. | Excerpt of 2022.11.08 Turnbull Deposition | 13 |
| 24 | 2003 Enzon-Jagotec-Skye Agreement | Excerpt of 2003.01.02 Co-Development, Collaboration and License Agreement by and between Enzon Pharmaceuticals, Inc. and Jagotec, AG, SkyePharma, Inc., and SkyePharma, PLC (Nicholson Dep. Ex. 11) | 7 |
| 25 | 2003 Skye Form 20-F | Excerpt of 2003 SkyePharma PLC Form 20-F (Nicholson Dep. Ex. 23) | 3 |
| 26 | 200 L Manufacturing Process | Excerpt of 3.2.P.2. Pharmaceutical Development [bupivacaine, liposome injectable suspension] Swindon 200L (PACIRA_DNV-00314504) | 3 |

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

| | | | |
|---|---|---|---|
| 27 | 2021.05.18 Press Release | 2021.05.18 Pacira Press Release (RDF_Pacira_00000149) | 5 |
| 28 | 2021 Pacira 10-K | Excerpt of Pacira Biosciences, Inc. 10-K FYE Dec. 31, 2021 (RDF_Pacira_00001669) | 3 |
| 29 | 2020 RDF Tax Returns | Excerpt of 2020 Research Development Foundation Tax Returns (RDF_Pacira_00011993) | 3 |
| 30 | 1993 Kim DepoFoam Article | Kim, et al., Prolongation of Drug Exposure in Cerebrospinal Fluid by Encapsulation into DepoFoam, 53 Cancer Research 1596 (1993) (RDF_Pacira_00024352) | 3 |
| 31 | 2022.05 Pacira Corporate Presentation | Excerpt of 2022.05 Pacira BioSciences Corporate Presentation (Turnbull Dep. Ex. 10) | 2 |
| 32 | Pacira Third Supp. Rog. Resp. | Excerpt of 2023.02.02 Plaintiff's Third Supplemental Response to Defendant's Frist Set of Interrogatories to Plaintiff (Nos. 1-9) | 49 |
| 33 | FDA Label for EXPAREL | 2021.03 EXPAREL Highlights of Prescribing Information (PACIRA_DNV-00700192) | 35 |
| 34 | 2003.08.22 Ltr. | 2003.08.22 - Letter from Nicholson to Brorby (RDF_Pacira_00008208) | 15 |
| 35 | 2003.12.01 Memo | 2003.12.01 - Memo from Dobie to Brorby (RDF_Pacira_00015632) | 6 |
| 36 | 2003.12.11 Ltr. | 2003.12.11 - Letter from Brorby to Nicholson (RDF_Pacira_00008138) | 9 |
| 37 | 2004.03.11 Ltr. | 2004.03.11 - Letter from Nicholson to Brorby (RDF_Pacira_00009980) | 2 |
| 38 | 2004.03.16 Ltr. | 2004.03.16 - Letter from Nicholson to Brorby (RDF_Pacira_00009982) | 13 |
| 39 | 2004.04.01 Ltr. | 2004.04.01 - Letter from Brorby to Nicholson (RDF_Pacira_00008076) | 14 |
| 40 | 2004.04.13 Ltr. | 2004.04.13 - Letter from Nicholson to Brorby (RDF_Pacira_00008038) | 2 |
| 41 | 2004.04.13 Draft 2004 Amendment | 2004.04.13 - Redline of 2004 Draft Amendment (RDF_Pacira_00008041) | 11 |
| 42 | 2011.09.16 Ltr. | 2011.09.16 - Letter from Steinhardt to Brorby (RDF_Pacira_00009996) | 2 |
| 43 | 2011.11.11 Ltr. | 2011.11.11 - Letter from Brorby to Steinhardt (RDF_Pacira_00009998) | 4 |
| 44 | 2012.02.02 Ltr. | 2012.02.02 - Letter from Brorby to Steinhardt (RDF_Pacira_00010004) | 5 |
| 45 | 2012.02.17 Email | 2012.02.17 - Email from Steinhardt to Parker (RDF_Pacira_00008987) | 4 |
| 46 | 2021 Emails | 2021.08.11 - 2021.11.15 - Emails between Brorby, Stack, & Molloy (RDF_Pacira_00010013) | 11 |
| 47 | Brorby Declaration | Declaration of Tom Brorby | 3 |
| 48 | Leventhal Declaration | Declaration of Daniel Leventhal | 4 |

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202 Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

# I.    **Introduction**

Pacira asks the Court to rule that it is excused from continued payments under the Agreements[1] between the parties despite its continued commercialization of the multivesicular liposome (also known as "DepoFoam," or "MVL") technology covered under the Agreements. Pacira argues that the expiration of one patent, the '838 Patent, terminates its payment obligations despite Pacira's continued use of other unexpired patents, including the '495 Patent, and trade secrets also covered by the Agreements. Pacira asks the Court to rewrite: (a) "existing ***and future*** patent or proprietary rights" to "existing" ***but not "future"*** patent or proprietary rights and (b) "***by Skye [n/k/a Pacira]*** or a third party" to "by a third party" ***and not by Skye [n/k/a Pacira]***. Rejecting these attempted rewrites fully resolves the dispute. The undisputed record demonstrates that the '495 Patent is: (a) a "future" patent covered by both Article 1.4 of the 2004 Amendment and Section 3.8 of the 1994 Assignment and (b) embodies Pacira's MVL drug, EXPAREL. The undisputed record also demonstrates that Pacira uses trade secrets in manufacturing EXPAREL.

Pacira initiated this action because it wants out of binding and enforceable contracts that its prior management willingly entered into and vigorously negotiated with RDF. But one party's hindsight discontent with a deal does not raise a cognizable cause of action, whether in law or equity. Neither in its Complaint (in which Pacira pled that "the plain language in the Agreements" mandated its position, Dkt. No. 1 at ¶¶ 8-9, 61) nor through a year of discovery (during which Pacira reversed its position and argued the "Agreements' terms are less than clear" and "ambiguous," Dkt. No. 56 at 1, 8, 12, 13, 14, 16, 18) has Pacira identified any basis under the actual language of the Agreements why it is entitled to avoid a fairly-bargained deal.

The parties have now completed discovery—exchanging over 1 million pages of documents, 500 pages of discovery responses, 260 pages of expert reports, and amassing 3,616 pages of deposition transcripts. While RDF maintains that this case should be resolved on its 12(c) Motion (Dkt. No. 41), the full record further demonstrates the frivolous nature of Pacira's claims and that Pacira's plea for discovery was all for naught.

---

[1] This dispute centers around a 1994 Assignment Agreement and subsequent 2004 Amendment, collectively referred to as the "Agreements." *See* Sections **Error! Reference source not found.**-II.B, below.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

Discovery has confirmed that Pacira has **no** factual basis for arguing that Pacira's recent '495 Patent is excluded from Article 1.4.  While Pacira previously argued that discovery on the scope of its patents was "integral" (Dkt. No. 56 at 9-10), Pacira's technical expert Dr. Ho, '495 Patent inventor Mr. Turnbull, and '495 Patent inventor Ms. Los each unanimously agreed that the claims of the '495 Patent cover the Amendment Technical Scope of Article 1.4.  Ho Dep. (Ex. 13) at 45:14-47:1, 65:24-66:8; Los Dep. (Ex. 19) at 34:21-35:6, 40:20-23, 42:20-43:16; Turnbull Dep. (Ex. 23) at 36:17-41:19.

In the absence of factual disputes, to avoid dismissal Pacira must convince the Court that, as a matter of contract interpretation, Article 1.4 is limited to "Skye's DepoFoam technology **as it existed** on April 15, 2004." Dkt. No. 56 at 15.  The plain language of Article 1.4 refutes Pacira's argument.  Pacira asks the Court to interpret Article 1.4 as covering existing **but not future** patent or proprietary rights in the face of language explicitly covering "existing **and future** patent or proprietary rights."  To support this contradictory position, Pacira identifies no explicit language expressing a date cutoff, but instead attempts to read a temporal limitation into a single "present tense" word:  "Consists."  Caselaw and common sense show Pacira is wrong.

Further, if even necessary to do so, review of the extrinsic record removes any doubt as to whether Pacira's interpretation is reasonable.  For example, while Pacira asserts in this action that patents with priority dates after 2004 are excluded from the Agreements, in 2012 ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████. 2012.02.02 Ltr. (Ex. 44) at RDF_Pacira_00010005; 2012.02.17 Email (Ex. 45) at RDF_Pacira_00008989.

Beyond Article 1.4, which is the focus of RDF's 12(c) Motion, two other provisions of the Agreements independently mandate dismissal of Pacira's Count I.  As a second basis for dismissing Count I, the '495 Patent also qualifies as "Assigned Proprietary Property" under Section 3.8 of the 1994 Assignment.  This is because the '495 Patent "relates to" the same field of technology— **multivesicular liposomes encapsulating a biologically active substance**—as at least two other patents that were indisputably "Assigned Proprietary Property."  There is no factual dispute that two patents indisputably part of "Assigned Proprietary Property" and the '495 Patent all relate to

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

that same field of technology.  Nor does Pacira propose an alternative interpretation of Section 3.8.

As a third basis for dismissing Count I, "Gross Revenues" include revenues from sales of EXPAREL based on Pacira's use of non-patent proprietary property (trade secrets) covered by the Agreements in manufacturing EXPAREL.  Once again, there is no fact dispute.  Pacira's SEC filings emphasize the "important role" "trade secrets" play in manufacturing of EXPAREL and Pacira's CEO, Mr. Stack, testified that ███████████████████████

███████████████████████████████████████████.  2021 Pacira 10-K (Ex. 28) at RDF_Pacira_00001692; Stack Dep. (Ex. 22) at 238:22-239:13.  And, once again, the plain language contradicts Pacira's attempt to "interpret" its way out of the Agreements.  Here, Pacira asks the Court to "read" the plain language of Article 1.1 "*by Skye [n/k/a Pacira]* or a third party" to mean "by a third party" *and **not by Skye [n/k/a Pacira]***.

Finally, RDF is entitled to summary judgment on Pacira's equitable Count II.  As explained in RDF's 12(c) Motion, Pacira's Complaint fails to meet the basic *Twombly / Iqbal* standard:  Pacira fails to address the elements of any specific equitable doctrine.  General fairness gripes are not a cognizable claim.  And, where Pacira does mention particular equitable doctrines, the undisputed facts confirm that such doctrines are not applicable as a matter of law.

Accordingly, RDF respectfully requests the Court grant summary judgment and dismiss all counts of Pacira's Complaint.

## II.    Statement Of Material Facts

### A.    RDF and the Clayton Entities Partnered With Pacira to Bring Multivesicular Liposome (MVL) Technology to the Public

1.    Since the founding of the Clayton Foundation in 1933, it and its sister nonprofit organizations, including RDF ("Clayton Entities"), have conducted or funded medical research to benefit the public.  Brorby Dep. Vol. I (Ex. 15) at 11:1-13:6, 16:17-17:11, 53:6-54:1; 2020 RDF Tax Returns (Ex. 29) at RDF_Pacira_00012013, 00012026.  In order to bring that medical research to the public, the Clayton Entities partner with practicing biotechnology companies.  *Id.*  To facilitate this process, RDF enters into contracts to license or assign them IP.  *Id.*

2.    The Clayton Entities funded the research of Dr. Sinil Kim related to technology for

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

a drug delivery platform using structures known as "multivesicular liposomes" ("MVLs") or "DepoFoam," a term coined by Dr. Sinil Kim and used prevalently in the industry interchangeably with MVLs.  Brorby Dep. Vol. I (Ex. 15) at 169:2-3, 180:2-181:21; Michniak-Kohn Rep. (Ex. 7) at ¶¶ 35-38, 162-175, 180-181; 1993 Kim DepoFoam Article (Ex. 30).[2]  MVLs consist of a honeycomb-like arrangement of hundreds of chambers, each encapsulating a drug, with that structure enabling delivery of the drug over a sustained period of time as the chambers break. Michniak-Kohn Rep. (Ex. 7) at ¶¶ 29-33.

3.     RDF partnered with a company, then known as DepoTech, later known as SkyePharma (or "Skye"), and today as Pacira, which will be collectively referred to as "Pacira," to bring MVL/DepoFoam technology to the public.  1994 Assignment (Ex. 1).  Dr. Kim joined DepoTech as a co-founder.  Crozier Dep. Vol. II (Ex. 18) at 14:6-15:17.  In 1994, RDF and Pacira entered into an Assignment Agreement ("1994 Assignment").  The 1994 Assignment defined "Proprietary Property"—along with "Assigned Proprietary Property," which "shall mean and include the Proprietary Property"—to include both "patent rights" and non-patent proprietary rights such as "trade secrets" and "confidential information."  1994 Assignment (Ex. 1) at §§ 1.1, 1.4, 2.1.

4.     The 1994 Assignment included an explicit listing of categories of existing proprietary property *of RDF* and effected the assignment to Pacira.  *See id.* at §§ 1.1, 2.1, Exhibit 1.  Relevant to this dispute, U.S. Patent No. 5,807,572 (the '572 Patent) is a continuation of U.S. Patent Application No. "08/020,483" identified in Exhibit 1, which covers the listed patents and "continuations."  *See id.*; '572 Patent (Ex. 3).

5.     The 1994 Assignment *also* specifically contemplated *Pacira* continuing to develop the MVL technology and included such *future* developments within the 1994 Assignment.  That is, the 1994 Assignment included multiple provisions that, as time progressed, dynamically modified "Assigned Proprietary Property" to include *future* patents and non-patent proprietary rights developed *by Pacira*.  *Id.* at §§ 3.1-3.8; *see also* Edwards Rep. (Ex. 11) at ¶ 29, n.10.  Section 3.8 states, in pertinent part: "If … DepoTech [n/k/a Pacira] … obtains patent rights … which relate

---

[2] *See also* FDA Label for EXPAREL (Ex. 33) at PACIRA_DNV-00700216; Stack Dep. (Ex. 22) at 133:23-134:10, 136:6-21, 138:4-24.

to the Assigned Proprietary Property, such … patent rights … shall be included in the Assigned Proprietary Property …." *See also* 1994 Assignment (Ex. 1) at §§ 1.1 (defining "Proprietary Property" to include "developments," "patent rights," "trade secrets," and "improvements thereto, modifications thereof" "related to the technology described in Exhibit 1 hereto"), 1.2.

6.     With the backdrop of these future-looking terms that dynamically add newly-developed patents and other technology to Assigned Proprietary Property, the 1994 Assignment defines the duration over which payments are to be paid to extend until "the last to expire of the patents or patent applications of the Assigned Proprietary Property." 1994 Assignment (Ex. 1) at § 4.3. Likewise, "[t]he term of this Agreement shall be for the life of the last to expire of the patents or patent applications of the Assigned Proprietary Property." *Id.* at § 9.1.

**B.     The Parties Resolved a Dispute Over Covered Technology Through Their 2004 Amendment That Explicitly Includes All Of Pacira's Future MVL Technology**

7.     In 2003, the parties began discussing two issues: (1) Pacira asserted certain MVL technology was not "Assigned Proprietary Property" and (2) Pacira sought to re-negotiate economic terms, stating that "the existing arrangement on reflection may not be entirely appropriate." 2003.08.22 Ltr. (Ex. 34) at RDF_Pacira_00008215. In response, RDF, consistent with its position in this action, asserted that the 1994 Assignment covered the disputed MVL technology because it was "relate[d] to" MVL technology explicitly referenced in the 1994 Assignment and therefore included under Section 3.8. 2003.12.11 Ltr. (Ex. 36) at RDF_Pacira_00008142. Pacira did not, in 2003, provide an alternative interpretation of "relate[d] to." *See* 2004.03.11 Ltr. (Ex. 37) at RDF_Pacira_00009981.

8.     The parties met in person on March 15, 2004, and Skye CEO Michael Ashton proposed a solution. RDF's Chairman of the Board of Trustees, Tom Brorby, who represented RDF at the meeting, testified that Mr. Ashton proposed an amendment in which RDF would agree to financial concessions in exchange for a more certain scope of included future technology:

> They said that what they wanted to do was first clarify in one document that they suggested an amendment, this amendment to the -- to the assignment agreement.
>
> Then they said we want to clarify, we want to simplify it, not have different royalties for different things, not have arguments about other consideration. And he said ***we want to get rid of this argument about is it an improvement or not***.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

And so he said that ***he wanted the scientists to be able to choose the formulation for the DepoFoam product based on the science and what's the best*** -- best formula, so we can make something good and market it.

And he said ***I don't want the scientists to have to stop and call the lawyers every time they come up with some tweaking to the DepoFoam*** in order to make it work with a particular drug.

Brorby Dep. Vol. II (Ex. 16) at 226:16-227:11.  Mr. Brorby responded that the proposed financial concessions of tens of millions in then due and future payments "was a lot to leave on the table," but Mr. Ashton of Pacira responded that the proposed deal was fair because "***we get rid of all these legal impediments, all the arguments about improvements*** and this, that and the other" and "we will pay you 2½ % of every dollar that [Pacira] collects on all products that use DepoFoam." *Id.* at 228:7-229:7.  Mr. Brorby "thought about it for a few minutes" and accepted.  *Id.* at 229:21-22. Skye's CFO, Donald Nicholson, who also attended the meeting, testified to no contrary recollection.  Nicholson Dep. (Ex. 21) at 161:19-164:22.

9.     The next day Pacira sent a draft agreement.   2004.03.16 Ltr. (Ex. 38) at RDF_Pacira_00009984.  Mr. Nicholson stated in transmitting the draft "[w]e believe that this is a fair and equitable position" and highlighted benefits to RDF under the draft as including "[r]oyalties on ***future products such as DepoBupivacaine***" and "[c]lear and unambiguous rules as to which payments royalties will be due on."   *Id.*   at RDF_Pacira_00009982.  Pacira brought "DepoBupivacaine," today known as EXPAREL, to market seven years later in 2011.  Dkt. No. 1 at ¶ 2; Ho Opening Rep. (Ex. 9) at ¶ 50.  After a round of edits from RDF (2004.04.01 Ltr. (Ex. 39)) and final counter-edits from Pacira (2004.04.13 Ltr. (Ex. 40), 2004.04.13 Draft 2004 Amendment (Ex. 41)), the parties executed the 2004 Amendment less than a month later (2004 Amendment (Ex. 2)).

10.     The 2004 Amendment begins by stating: "The parties wish to clarify and revise the terms of the Assignment Agreement."  2004 Amendment (Ex. 2) at 2.

11.     Article 1.1 defines "Gross Revenues" upon which Pacira's payments are based to include two categories "charges actually collected by Skye [n/k/a Pacira] [i] from ***sales***, rental, lease, licensing, maintenance, or production of ***a Product* or** [ii] from licensing or the ***use of***

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

1   ***Proprietary Property by Skye*** or a third party."[3]

2   12.   Article 1.4 begins:   "'Proprietary Property' shall mean Skye's multivesicular

3   liposome DepoFoam technology which consists of ***microscopic, spherical particles composed of***

4   ***multiple nonconcentric aqueous chambers encapsulating the biologically active substance***

5   ***therein in the presence or absence of any acid or salt or other compound*** (the 'DepoFoam

6   Technology')."[4]   RDF's expert, Dr. Michniak-Kohn, and Pacira's expert, Dr. Ho, both testified that

7   the 28-word ***emphasized*** phrase (the "Amendment Technical Scope") definitionally describes the

8   class of particles known as MVLs when encapsulating a drug.   Ho Dep. (Ex. 13) at 64:13-23;

9   Michniak-Kohn Rep. (Ex. 7) at ¶ 48.   That the Amendment Technical Scope covers all MVL

10   technology is consistent with Mr. Brorby's testimony regarding the negotiations leading to the 2004

11   amendment as discussed above.

12   13.   The next sentence of Article 1.4 states:   "Such DepoFoam Technology shall include

13   (a) the Assigned Proprietary Property or Improvements as defined under the 1994 Agreement,

14   and/or (b) ***existing <u>and future</u> patent or proprietary rights of Skye in DepoFoam Technology***

15   whether or not covered by or subject to the Assignment Agreement."   Article 1.4 contains no

16   reference to any dates or any other explicit temporal recitation beyond "***existing <u>and future</u>***."   No

17   portion of the 2004 Amendment references any "priority date" or other temporal limitation with

18   respect to any patent.   *See also* Brorby Dep. Vol. II (Ex. 16) at 299:5-11 ("[N]o one brought up

19   anything about priority dates.").

20   14.   Pacira's original draft included the relevant language of Article 1.1 and the base

21   language of Article 1.4 stating "'Proprietary Property' shall mean Skye's ***multivesicular liposome***

22   ***DepoFoam technology which consists of microscopic, spherical particles***."   2004.03.16 Ltr. (Ex.

23   38) at RDF_Pacira_00009985, 9986.   RDF proposed edits to the specific wording of the

---

[3] The 2004 Amendment does not include a definition for Product, instead carrying forward the 1994 Assignment Agreement definition of "Product" as, in relevant part, "a product or portion of a product that where made, used or sold embodies an invention there claimed … in an Assigned Patent."   1994 Assignment (Ex. 1) at § 1.7.

[4] While initially defining "Proprietary Property," Article 1.4 further states that "the scope of all relevant terms impacting such obligations contained in the Assignment Agreement (e.g., the definitions of Products, Assigned Proprietary Property, Assigned Applications, Assigned Patents, Improvements, etc.) shall be deemed to include all of the DepoFoam Technology."

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

Amendment Technical Scope and proposed the clarifying language that "Such DepoFoam Technology shall include … existing and future patent or proprietary rights of Skye in DepoFoam Technology." 2004.04.01 Ltr. (Ex. 39) at RDF_Pacira_00008080, 8088. Pacira, in turn proposed multiple edits to the "Such DepoFoam Technology" sentence, but accepted without further edits the language "existing or future." 2004.04.13 Ltr. (Ex. 40), 2004.04.13 Draft 2004 Amendment (Ex. 41) at RDF_Pacira_00008043-44; *see also* Nicholson Dep. (Ex. 21) at 213:19-21 (testifying as to Pacira's edits to this sentence, "I agreed with some of it. I disagreed with other bits. I put it into the agreement and sent it back to him.").

## C.   Background in Contracts Specifying Covered Patents and Non-Patent Proprietary Rights

15.     The nature of and conventions for describing patent and non-patent proprietary rights is relevant in evaluating the reasonableness of the parties' interpretations of the Agreements. For patents, "[a]n individual patent has many dates associated with it," which may include a "filing date" "reflect[ing] when the application that became the patent was filed, as well as "an 'earliest claimed priority date' that is earlier than the filing date," and a later "issue date."[5] Stevens Rep. (Ex. 8) at ¶ 174. "Patents sharing priority claims are often referred to as a 'patent family.'" *Id.* at ¶ 149. Patent statutes define various classes of patents including earlier priority claims, including "reissue," "divisional," "continuation," and "continuation-in-part" patents. *Id.* at ¶ 148.

16.     Where a drafter desires to specify inclusion of "some or all family members of referenced patents," "[o]ne common approach" is to list the applicable "types of priority-claiming applications" such as reissue, divisional, and continuation. *Id.* at ¶¶ 150-51; Edwards Dep. (Ex. 14) at 30:3-31:22 ("it would not surprise me that these are the terms most often used").[6] The 1994 Assignment on four occasions indicates the inclusion of family members by including such

---

[5] Because of these multiple dates, if a drafter desired to specify a time-based (temporal) cutoff on covered IP, the drafter "would be aware that each of these dates is a potential option to define a temporal scope" and therefore "would understand it is not sufficient to define a period without reference to which patent date type is intended." *Id.* at ¶ 175.

[6] IP covered by an agreement can be specified "by an explicit listing" or employing "language enumerating criteria." Stevens Rep. (Ex. 8) at ¶ 145. Family status is one of several known criteria. Dr. Stevens provides an overview of common techniques for specifying various criteria, including family status in his Report. *See id.* at ¶¶ 145-184.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

language.  Stevens Rep. (Ex. 8) at ¶ 151 (quoting 1994 Assignment (Ex. 1) at §§ 1.2., 1.5, 1.6, and Ex. 1).  "Such an approach is favored because by using legally-defined terms the language is precise."  *Id.* at ¶ 152.

17.     Rather than public disclosure in a patent, inventions and ideas may be maintained proprietarily as "non-patent forms of IP such as know-how, trade secrets, or confidential information."  *Id.* at ¶ 176.  Unlike patents, these other forms of proprietary rights "are not associated with multiple dates in the same way as patents, but generally come into existence on a given date." *Id.*  Thus, "while for a given patent the term 'future' could apply under one date option (e.g., filing date) and the term 'past' could apply under another date option (e.g., earliest claimed priority date), the same is not true for know-how, trade secrets, or confidential information." *Id.*

**D.     Pacira's Current MVL IP and Manufacture of EXPAREL**

18.     As contemplated under the Agreements, Pacira has, both before and after the 2004 Amendment, continuously researched and developed additional IP on MVL's.  In 2021, in announcing allowance of the '495 Patent, Pacira's CEO highlighted "the deep multivesicular liposome manufacturing expertise that *Pacira has accumulated over more than 25 years*." 2021.05.18 Press Release (Ex. 27) at RDF_Pacira_00000149; *see also* Nicholson Dep. (Ex. 21) at 200:4-9; Stack Dep. (Ex. 22) at 62:10-20.

19.     Various correspondence and public presentations over the years document the then-current status of MVL IP.  In 2012, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. 2012.02.02 Ltr. (Ex. 44) at RDF_Pacira_00010005; [7]  2012.02.17 Email (Ex. 45) at RDF_Pacira_00008989.  ████████████████████████████████████████████. *See* 2012.02.17 Email (Ex. 45) at RDF_Pacira_00008989.  ████████████████████████████████████████████████████████████████████████████████ *See id.*

---

[7] "We request again that you provide this information to which RDF is entitled under Section 5.6 of the Assignment Agreement."  Section 5.6 of the 1994 Assignment, in turn, states: "DepoTech shall keep full, true, clear and accurate records and books of account *with respect to the Assigned Proprietary Property* subject to royalty."  On November 11, 2011, RDF also similarly requested that Pacira "confirm that we have identified all of the relevant DepoFoam Technology patents …." 2011.11.11 Ltr. (Ex. 43) at RDF_Pacira_00009999.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

1   U.S. Patent No. 10,398,648 (the '648 Patent), a member of the PCIRA.034 family, remains in force

2   today with a term not set to expire until April 8, 2031. '648 Patent (Ex. 5).[8]  Pacira's expert, Dr.

3   Ho, opined that the '648 Patent "relates to a 'spray process' that Pacira developed, but that is not

4   used for commercial manufacture of EXPAREL®."  Ho Opening Rep. (Ex. 9) at ¶ 67.

5        20.   ████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████.  2012.02.17 Email

7   (Ex. 45) at RDF_Pacira_00008989.  Pacira has asserted that the '838 Patent was: (a) covered by

8   the Agreements and (b) claims a method of manufacture of EXPAREL used in what is known as

9   the "45 Liter" manufacturing process, which it refers to as "Original Patented Technology."  Dkt.

10  No. 1 at ¶¶ 34, 40.  Beyond the '838 Patent, Pacira's 2020 Form 10-K states:  "As of December 31,

11  2020, there are over seven families of patents and patent applications relating to various aspects of

12  the DepoFoam delivery technology . . . with the last currently issued patent on the DepoFoam

13  delivery technology expiring in 2037 . . ."  Pacira 2020 Form 10-K at 19-20.

14       21.   In May 2021, Pacira issued a press release announcing allowance of what would

15  issue as U.S. Patent No. 11,033,495 (the '495 Patent).  2021.05.18 Press Release (Ex. 27) at

16  RDF_Pacira_00000149.  Pacira has asserted that the '495 Patent covers EXPAREL made with a

17  "200 Liter" process, which it refers to as "New Patented Technology."  *Id. See also* Dkt. No. 1 at

18  ¶¶ 42, 44.  Four different witnesses—RDF's expert, Dr. Michniak-Kohn, Pacira's expert, Dr. Ho,

19  and both deposed named inventors, Kathy Los and David Turnbull—each testified that the claims

20  of the '495 Patent cover the Amendment Technical Scope.  Michniak-Kohn Dep. (Ex. 12) at

21  238:19-243:21; Michniak-Kohn Rep. (Ex. 7) at 94-102; Ho Dep. (Ex. 13) at 45:14-47:1, 65:24-

22  66:8; Los Dep. (Ex. 19) at 34:21-35:6, 40:20-23, 42:20-43:16; Turnbull Dep. (Ex. 23) at 36:17-

23  41:19.  Pacira's CEO explained the importance of  the '495 Patent as adding "yet another layer of

24  market exclusivity that extends our proprietary position for EXPAREL into the 2040s."  2021.05.18

25  Press Release (Ex. 27) at RDF_Pacira_00000149.

26

27  [8] A patent is entitled to a term "ending 20 years from … the date on which the earliest [non-
    provisional] application [to which the patent claims priority] was filed."  35 U.S.C. § 154.  Here,
28  the '648 Patent identifies an application filed April 8, 2011 as the earliest non-provisional
    application to which it claims priority, resulting in an April 8, 2031 expiration date.

22.    Pacira has confirmed that, in addition to patents, it also relies on "trade secrets," as well as other non-patent proprietary rights, in producing EXPAREL.  Pacira stated in its 2021 10-K: "*Trade secrets* play an important role in protecting our pMVL-based products," which include EXPAREL, and that "[t]he scale-up and commercial manufacture of pMVL-based . . . products involve *processes, custom equipment and in-process and release analytical techniques* that we believe *are unique to us*."  2021 Pacira 10-K (Ex. 28) at RDF_Pacira_00001692; *see also* 2022.05 Pacira Corporate Presentation (Ex. 31) at Page 2 of 2 (describing "Multiple layers of EXPAREL market exclusivity" as including trade secrets).  Likewise, Pacira's witnesses all described ███████ █████████████████████████████████████████████████████████████.  *See* Stack Dep. (Ex. 22) at 238:12-14, 239:8-13; Molloy Dep. (Ex. 20) at 107:22-108:7; Turnbull Dep. (Ex. 23) at 46:14-50:20, 53:10-20.  Further, nothing in the record suggests Pacira has ceased use of trade secrets pre-dating the 2004 Amendment.  Pacira was "working on DepoBuvicaine" (EXPAREL) since at least 2003. *See* 2003 Skye Form 20-F (Ex. 25) at Page 3 of 3; *see also* 200 L Manufacturing Process (Ex. 26) at PACIRA_DNV-00314506; Turnbull Dep. (Ex. 23) at 46:14-49:3.

**E.    Pacira's Litigation Position and Comparison to Past Conduct**

23.    The parties have operated under the Agreements without further amendment since 2004.  Indeed, Pacira has admitted that all of its payments to RDF up to the filing of this lawsuit, that is, "through December 2021 are consistent with the terms of the agreements to which the parties agreed" (i.e., were due and owing under Articles 1.1 and 2.1 of the 2004 Amendment).  *See* 2021 Emails (Ex. 46) at RDF_Pacira_00010019.

24.    Over that time RDF's position has remained unchanged.  In 2011, RDF reminded Pacira of the deal RDF and Pacira (then Skye) struck in 2004: "Rather than litigate the dispute over this invention and other issues, as part of a settlement which reduced milestone and royalty payments, *Skye agreed that any then existing and future inventions of Skye relating in any way to the DepoFoam technology would be deemed to be part of the Assigned Proprietary Property* and therefore subject to a royalty to RDF."  2011.11.11 Ltr. (Ex. 43) at RDF_Pacira_00009998; *see*

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

*also* 2012.02.02 Ltr. (Ex. 44).[9]  RDF repeated that same position and reminder in 2021 prior to the filing of this litigation.   2021 Emails (Ex. 46) at RDF_Pacira_00010013; [10] *id.* at RDF_Pacira_00010016.[11]

25.    Pacira's past correspondence ***contradicts*** its current litigation position.   Pacira asserts in this litigation that the 2004 Amendment should be interpreted to cover only "technology in existence at the time of the 2004 Amendment."  Pacira Third Supp. Rog. Resp. (Ex. 32) at 59. In 2012, however, ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████  2012.02.02 Ltr. (Ex. 44) at RDF_Pacira_00010005; 2012.02.17 Email (Ex. 45) at RDF_Pacira_00008989; *see also* 2011.09.16 Ltr. (Ex. 42) at RDF_Pacira_00009996 (Pacira, contrary to its litigation position, admitting in 2011 that "the 2004 Assignment requires us to pay royalties" for use of non-patent proprietary rights).

## III.    ARGUMENT

### A.    The Agreements Cover Pacira's Sales of EXPAREL Under Article 1.4 of the 2004 Amendment Because The '495 Patent is Assigned Proprietary Property

#### 1.    Pacira's Raises Only A Contract Interpretation Argument To Assert That Its Ongoing Sales of EXPAREL Are Not Within The Agreements

Pacira does not dispute that *if* Pacira's '495 Patent is Assigned Proprietary Property (and, thus, also an "Assigned Patent"), then EXPAREL is a "Product" because it "embodies an invention there claimed" in the '495 Patent.  1994 Assignment (Ex. 1) at § 1.7; Dkt. No. 56 at 9.  Pacira also does not dispute that the 2004 Amendment defines "Gross Revenues" to include charges collected

---

[9] "[T]he relevant language of the 2004 Amendment is very clear that Research Development Foundation ('RDF') is entitled to royalties on all products covered under existing and future patents filed by DepoTech/Skye/Pacira relating to the DepoFoam technology."
[10] "The fact that subsequent products of or improvements by Pacira could result in patent protection lasting for additional years was clearly contemplated by the parties at the time of the 2004 Amendment, and the parties expressly and unambiguously agreed that this would extend the royalty payment obligations."
[11] "The parties carefully negotiated the terms of the 2004 Amendment as a comprehensive settlement of several disputed issues. The royalty obligation is not limited to only certain DepoFoam products or to only those DepoFoam products developed by RDF or covered by patents filed by any certain time or date."

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

by Pacira for, among other things, sales of a "Product."  2004 Amendment (Ex. 2) at Art. 1.1.[12]

There are three criteria for a patent to qualify as Assigned Proprietary Property under Article 1.4:  (1) Is the patent assigned to Pacira?, (2) Does the patent cover the Amendment Technical Scope?, and (3) Does the patent meet the temporal limitation "existing or future"?  The first two criteria are undisputed—both as to contract interpretation and relevant facts.  Pacira does not dispute that the '495 Patent is assigned to Pacira and, thus, "of Skye [n/k/a Pacira]."  '495 Patent (Ex. 6) (listing Pacira as assignee); Dkt. No. 1 at ¶ 44.  And Pacira does not dispute that the claims of the '495 Patent cover the Amendment Technical Scope.  Michniak-Kohn Rep. (Ex. 7) at 94-102; Ho Dep. (Ex. 13) at 45:14-47:1, 65:24-66:8; Los Dep. (Ex. 19) at 34:21-35:6, 40:20-23, 42:20-43:16; Turnbull Dep. (Ex. 23) at 36:17-41:19.

For the third criteria, Pacira does not dispute the facts—the '495 Patent's priority, filing, and issue dates are all in 2021—that demonstrate that the '495 Patent is a "future" patent.  Pacira raises only a contract interpretation issue, arguing that, despite the language "existing **and future**," "Assigned Proprietary Property" includes **only** "DepoFoam technology **as it existed on** April 15, 2004."  Dkt. No. 56 at 15.  If Pacira's interpretation argument is wrong and "Assigned Proprietary Property" includes, consistent with the plain language of Article 1.4, "existing **and future**" patents, this case is over.  Pacira's contract interpretation is both unreasonable under the four corners of the Agreements and contrary to the relevant extrinsic evidence.

### 2.     Pacira's Interpretation Of Article 1.4 As Excluding Future Patents Is Not Reasonable And Is Contrary To The Extrinsic Record

#### a.     Pacira fails to show ambiguity

RDF's position is simple and straightforward:  The defined term Assigned Proprietary Property **includes** patents with a priority date after the Effective Date of the 2004 Amendment.  This is because the plain, explicit, and only language of Article 1.4 addressing any temporal boundaries states those terms encompass "all of the DepoFoam Technology," which "shall include … existing **and future** patent or proprietary rights."

---

[12] This Section III.A, as well as Section III.B, below, relate to Pacira's sales of EXPAREL produced using its 200 L manufacturing process.  Section III.C, below, relates to Pacira's sales of EXPAREL produced using both its 45 L and 200 L manufacturing process.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

Pacira's position, in contrast, lacks credibility on its face because it creates a limitation that does not exist and contradicts the actual language. Pacira points to the "which consists of" language in the sentence prior to "existing *and future*" and argues that "[i]t is reasonable to interpret 'consists' in the 2004 Amendment as intending to cover Skye's DepoFoam technology *as it existed on* April 15, 2004." Dkt. No. 56 at 15. Pacira asserts the "present tense" nature of "consists" mandates this result. *See id.* Then, in an attempt to explain away the "*future*" language, Pacira asserts that "future patents" does not literally mean future patents, but only patents having a past *priority* date with a future filing date—that is, continuations, divisionals, etc. *See id.* at 15-16.

Pacira's position is not credible or reasonable in view of the four corners of the Agreements. First, Pacira's self-serving interpretation contradicts the explicit word "future"—and Pacira's attempts to explain away that contradiction are not credible. As to patents, while it is true that a patent can have a "future" filing date and "existing" priority date, the 1994 Agreement demonstrates there is known, specific language, which it uses on four occasions, to indicate the inclusion of family members by referencing the specific legal classes of such patents—"divisional, continuation," etc. *See* 1994 Assignment (Ex. 1) at §§ 1.2., 1.5, 1.6, and Ex. 1. If that was the intention of Article 1.4, Pacira cannot explain why the parties would forego this more specific language. Further, Article 1.4 also references future non-patent "proprietary rights," which, unlike patents, are not associated with multiple dates. How can non-patent technology be both: (a) limited to Skye's *existing* proprietary property in 2004 as Pacira urges, and (b) include technology Skye develops thereafter (i.e., in the "*future*") as the plain language mandates? Answer: It can't. Thus, Pacira's urged date cutoff cannot be reconciled with the plain language.

Second, the relevant case law does not support Pacira's argument that use of the present-tense word "consists" excludes future—particularly where, as here, the word is used in the context of a definition. 1 U.S.C. § 1 states that "unless the context indicates otherwise," "words used in the present tense include the future as well as the present." As the Sixth Circuit has explained, "[a]ll contracts use the present tense—at least in part" and "legal drafters frequently use the present tense to cover the present and the future." *Multimatic Inc. v. Faurecia Interior Sys. USA*, 358 Fed. Appx. 643, 652 (6th Cir. 2009) ("In our view, as in the view of the district court, the confidentiality

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

agreement unambiguously covers pre-existing *and* future trade secrets.") (emphasis in original).

"[E]ven the cases finding that, in the context of a specific document, the use of the present tense is not forward-looking suggest that the context containing the present-tense verb should guide the interpretation." *Memory Integrity, LLC v. Intel Corp.*, 178 F. Supp. 3d 1022, 1038 (D. Ore. 2016). Thus, Pacira cannot use the presence of "consists" to make its case without demonstrating that the context of Article 1.4 supports abandoning the default rule that present-tense terms include future. Here, the context refutes Pacira's position. The context of "which consists of" in Article 1.4 is that it indicates that what follows is an expanded description/definition of what precedes that phrase, without injecting any temporal limitation. And to the extent there was any question on whether there was intent to exclude future, the very next sentence confirms no such intent, explicitly stating "existing *and future*." 2004 Amendment (Ex. 2) at Art. 1.4.

To prove ambiguity, Pacira must show a term "may reasonably be interpreted in more than one way." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 137 Nev. 76, 83, 482 P.3d 665, 673 (2021) (quoting *Galardi v. Naples Polaris, LLC*, 129 Nev. 306, 309, 301 P.3d 364, 366 (2013)); *see also id.* (the "court initially determines whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written") (quoting *Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015)). Because Pacira's interpretation is not reasonable in light of the four corners of the Agreement, this leaves RDF's interpretation as the only reasonable interpretation. Thus, there is no ambiguity.

**b.     The extrinsic evidence confirms RDF's interpretation**

Should the Court choose to review it, the extrinsic record confirms and supports RDF's interpretation. Pacira's prior statements contradict its current litigation position. While today Pacira asserts that Article 1.4 limits Assigned Proprietary Property to "Skye's DepoFoam technology *as it existed on* April 15, 2004" (Dkt. No. 56 at 15), that was not Pacira's position in 2012. Then, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ 2012.02.02 Ltr. (Ex. 44) at RDF_Pacira_00010005; 2012.02.17 Email (Ex. 45) at RDF_Pacira_00008989.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

1    Further, the very purpose of the 2004 Amendment was to preemptively resolve any disputes

2    on which future patents and proprietary property was included, which also contradicts Pacira's

3    litigation-driven interpretation.  Mr. Brorby testified that the intent, as expressed by Pacira's CEO,

4    was "to get rid of this argument about is it an improvement or not" such that, ***in the future***, "I don't

5    want the scientists to have to stop and call the lawyers every time they come up with some tweaking

6    to the DepoFoam."  Brorby Dep., Vol. II 226:16-227:11.  Indeed, Mr. Ashton urged Mr. Brorby to

7    accept the deal, which Mr. Brorby viewed as giving up the right to tens of millions in then due and

8    future payments, based on Pacira's commitment that the 2004 Amendment would "get rid of all

9    these legal impediments, all the arguments about improvements."  *Id.* at 228:7-229:7.

10    Mr. Brorby's testimony is fully consistent with his correspondence over the years—

11    explaining in written correspondence in 2011 that in 2004 "***Skye agreed that any then existing and***

12    ***future inventions of Skye relating in any way to the DepoFoam technology would be deemed to***

13    ***be part of the Assigned Proprietary Property*** and therefore subject to a royalty to RDF"

14    (2011.11.11 Ltr. (Ex. 43) at RDF_Pacira_00009998), and explaining the same thing in 2021 (2021

15    Emails (Ex. 46)).  Mr. Nicholson's contemporaneous statement, in sending the initial draft of the

16    2004 Amendment, also confirms the intent to provide to RDF "[r]oyalties on ***future products such***

17    ***as DepoBupivacaine***," known today as EXPAREL.    2004.03.16 Ltr.  (Ex. 38)  at

18    RDF_Pacira_00009982.

19    Further, the 1994 Assignment was indisputably forward-looking, by encompassing both

20    then-existing and potential future technology (*see* Section II.A, above), consistent with Mr.

21    Brorby's testimony on resolving the scope of future-included IP.  By contrast, Pacira's

22    interpretation presumes an intent to overrule this structure, but without any explicit language

23    reflecting this intent.  Likewise, if the 2004 Amendment cut off any future IP as Pacira urges, there

24    would have been no need for Article 1.4—instead, the parties could just have enumerated the

25    purported fixed and final universe.  *See* Stevens Rep. (Ex. 8) at ¶ 145 (explaining covered IP may

26    be indicated "by an explicit listing" or "language enumerating criteria," where under the latter "the

27    universe of covered IP may become dynamic").

28    That the parties intended for "DepoFoam Technology" (i.e., "Assigned Proprietary

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

Property") to capture a dynamic category of technology – as opposed to being limited to only then-existing technology – is further reflected in the fact that Pacira and the scientific community have for decades used "DepoFoam" to describe multivesicular liposome drug delivery systems. *See* Michniak-Kohn Rep. (Ex. 7) at ¶¶ 35-38, 162-175, 180-181. Indeed, Pacira represents to the public that EXPAREL produced pursuant to both its 45 L and 200 L processes is a "suspension of multivesicular liposomes (DepoFoam® drug delivery system) containing bupivacaine." *See* FDA Label for EXPAREL (Ex. 33) at PACIRA_DNV-00700216; Stack Dep. (Ex. 22) at 133:23-134:10, 136:6-21, 138:4-24. Thus, Pacira uses DepoFoam in EXPAREL produced according to both the '495 Patent as well as the now-expired '838 Patent.

Finally, Pacira's interpretation conflicts with extrinsic evidence of the nature of IP and conventions for describing covered IP. First, the parties' respective technical experts confirm that the 28-word Amendment Technical Scope "***basically is a definitions [sic] of MVL***," multivesicular liposomes. Ho Dep. (Ex. 13) at 64:13-23; *see also* Michniak-Kohn Rep. (Ex. 7) at ¶ 48. Thus, according to the experts, Article 1.4's uses of "which consists of" follows typical contract convention—***as a definition***. This straightforward interpretation casts further doubt on Pacira's assertion of an implied, unstated temporal limitation.

Second, a drafter desiring to include a temporal cutoff of patents "would understand it is not sufficient to define a period without reference to which patent date type is intended." Stevens Rep. (Ex. 8) at ¶ 175. This is because "[a]n individual patent has many dates associated with it," including priority, filing, and issue dates. *Id.* at ¶ 174. "[A]bsent an explicit reference to the type of patent date referenced," which is the case here, "IP professionals would not view a given provision or clause as implying any temporal limitation." *Id.* at ¶ 175. Thus, "consists" cannot be a temporal cutoff because it would leave unanswered ***what*** patent date is cut off.

Third, reaffirming that Pacira cannot reconcile ***excluding*** future IP with the explicit language "future" ***non-patent*** "***proprietary rights***," Dr. Stevens explains that "non-patent forms of IP such as know-how, trade secrets, or confidential information" "are not associated with multiple dates in the same way as patents, but generally come into existence on a given date." Stevens Rep. (Ex. 8) at ¶ 176. Thus, as discussed in Section III.A.2.a, above, Pacira's attempt to reconcile its

unstated date cutoff with the language "future patents" cannot explain away the irreconcilable conflict between a date cutoff and "future" non-patent "proprietary rights."

<u>Fourth</u>, the parties' respective contract experts confirm that contract drafters know to use specific and precise language to convey inclusion of family members—divisions, continuations, etc.—rebutting Pacira's assertion that "consists" and "future" convey that concept. *See* Section II.C, above. "Such an approach is favored because by using legally-defined terms the language is precise." Stevens Rep. (Ex. 8) at ¶ 152.

In sum, the extrinsic record further confirms Pacira's litigation-inspired interpretation is inconsistent with the actual language of Article 1.4, is contrary to Pacira's prior pre-litigation interpretation of the same provision, and is contrary to the very purpose of the 2004 Amendment. To the extent there was any question when viewing the four corners of the Agreements that Pacira's interpretation is unreasonable, the extrinsic record more than confirms it is unreasonable and RDF's interpretation is correct.

**B.     The Agreements Cover Pacira's Sales Of EXPAREL Under Section 3.8 Of The 1994 Agreement Because The '495 Patent Is Assigned Proprietary Property**

As an independent ground for summary judgment, the '495 Patent also qualifies as "Assigned Proprietary Property" under Section 3.8 of the 1994 Assignment. This is because the '495 Patent "relates to" the same field of technology of at least two other patents that were indisputably "Assigned Proprietary Property."[13]

**1.     Section 3.8 States That Pacira's Future Patents Related To The Same Field of Technology Of Existing Assigned Proprietary Property "Shall Be Included In The Assigned Proprietary Property"**

**a.     Pacira fails to show ambiguity**

Section 3.8 states, in relevant part: "If … DepoTech [n/k/a Pacira] … obtains patent rights … which relate to the Assigned Proprietary Property, such … patent rights … shall be included in the Assigned Proprietary Property …."  As an initial matter, it is undisputed that Section 3.8 is

---

[13] The same conclusion follows from Section 1.1. Section 1.1 covers "patent rights" "related to the technology described in Exhibit 1" and, as discussed below, the '495 Patent is "related to the technology" described in the '572 Patent, whose family Exhibit 1 identifies.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

both: (a) *future*-looking and (b) covers *Pacira's* future developments.  Pacira's expert, Mr. Edwards, acknowledges this, opining: "In sections 3.5 and *3.8 of the 1994 Assignment Agreement*, certain improvements *made by Pacira*, as Licensee, were included in the license scope …." Edwards Rep. (Ex. 11) at ¶ 29, n.10.  RDF's expert, Dr. Stevens, likewise confirms that the language of Section 3.8 "is consistent with an objective to define Field of Technology clause *with no temporal limitations*."  Stevens Rep. (Ex. 8) at ¶ 204.

Section 3.8's conditional prefatory phrase, "*If* either DepoTech or RDF files patent applications or otherwise obtains patent rights" would make no sense if limited to existing rights. The forward-looking nature of Section 3.8 is also consistent with the 1994 Assignment overall, which contains numerous other forward-looking provisions. *See* 1994 Assignment (Ex. 1) at §§ 1.1 (including, along with "patent rights" and "patent applications," "developments," "improvements thereto," and "modifications thereof"), 1.2 (including "any patent now or hereafter owned or controlled"), 1.8, 3.1-3.6.

Section 3.8 defines what future patents are included using the phrase "which relate to." *Id.* at § 3.8.  Because the Agreements do not define the phrase "relate to," it should be given its plain and ordinary meaning.  The "Supreme Court and the Ninth Circuit has recognized that the 'ordinary meaning' of 'related' is a broad one." *Assn. Services of Wash., Inc. v. Western Metal Industry*, 563 F. Supp. 3d 1140, 1149-1150 (W.D. Wash. 2021) (citing *Morales v.Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031 (1992) and *Pakootas v.Teck Cominco Metals, Ltd.*, 905 F.3d  565, 585 (9th Cir. 2018)).  Many courts have adopted the Black's Law Dictionary definitions, including "connected in some way," "standing in relation; connected; allied; akin," and "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *See, e.g.*, *Morales*, 504 U.S. at 383.[14]

Section 3.8 uses "which relates to" in the context of comparing a new patent to a field of technology defined by the subject matter of patent and non-patent proprietary rights that are a part

---

[14] *See also Assn. Services*, 563 F. Supp. 3d at 1149; *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378-79 (Fed. Cir. 2009); *AgroFresh Inc. v. MirTech, Inc.*, 257 F. Supp. 3d 643, 656-57 (D. Del. 2017).  *See also Acosta v. Master Maintenance and Const. Inc.*, 452 F.3d 373, 378-79 (5th Cir. 2006) ("'Relate' means 'to have connection, relation, or reference,' American Heritage Dictionary of the English Language (4th Ed. 2000)").

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

of "Assigned Proprietary Property."  In this context, and applying the caselaw above, a new patent would relate to "Assigned Proprietary Property" if it was **connected to or otherwise concerned or pertained** to the same field or subject matter as any of the "Assigned Proprietary Property."  That is, Section 3.8 uses "relate to" in its normal sense to add to "Assigned Proprietary Property" any patents that relate to the same field of technology as existing "Assigned Proprietary Property."

Pacira presents no alternative to this plain language interpretation.  The only reference to Section 3.8 in Pacira's Interrogatory responses is a single conclusory sentence that does nothing but repeat the contractual language.  Pacira Third Supp. Rog. Resp. (Ex. 32) at 79-80.

In the context of a different provision, Section 1.2, Pacira has alleged that "related to" refers to "family members to other earlier patents and patent applications," meaning continuation, divisionals, etc. *See* Dkt. No. 56 at 15-16.  But that cannot possibly be the meaning of "relate to" in Section 3.8.  The "relate to" language in Section 3.8 compares a new patent to "Assigned Proprietary Property."  1994 Assignment (Ex. 1) at §§ 1.4, 1.1.  The latter is not limited to patents, but explicitly includes "trade secrets," "developments," and "confidential information" "whether patentable or not."  Pacira's patent-specific "patent family" interpretation of "relate to" cannot apply to non-patent Assigned Proprietary Property and, thus, cannot be the meaning of "relate to" in Section 3.8.[15]

### b.   The extrinsic evidence confirms RDF's interpretation

Notwithstanding the clarity of the plain language and the lack of a viable alternative interpretation, should the Court choose to review the extrinsic record, that evidence confirms and supports RDF's interpretation.  <u>First</u>, RDF's interpretation is consistent with the conduct of the parties prior to this ligation.  In 2003, before execution of the 2004 Amendment, RDF pointed to Section 3.8 in refuting Pacira's argument that certain post-1994 patents were not included.  2003.12.11 Ltr. (Ex. 36) at RDF_Pacira_00008142.  There, as here, RDF asserted that a future patent was "related to" the original IP enumerated in the 1994 Assignment "because it involves the same kind of technology: technology for multivesicular lioposomes with an encapsulated

---

[15] Likewise, the "related to" language of Section 1.1 compares new non-patents, including "trade secrets," to "the technology described in Exhibit 1."  1994 Assignment (Ex. 1) at § 1.1.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

biologically active substance." *Id.* (referring to attached memo); 2003.12.01 Memo (Ex. 35) at RDF_Pacira_00015634.[16]  Pacira, on the other hand, has ***never*** offered an alternative meaning of "relate to" as used in Section 3.8.  *See, e.g.*, 2004.03.11 Ltr. (Ex. 37) at RDF_Pacira_00009981.

Second, RDF's interpretation is consistent with a recognized contract objective "to specify [inclusion of] all IP falling within a … field of technology" by referencing "other identified IP" as defining that field of technology.  Stevens Rep. (Ex. 8) at ¶¶ 159-60, 163.  Drafters knew to accomplish this objective through "the use of 'relate to' and other similar terms and phrases."  *See id.*; *see also* Edwards Dep. (Ex. 14) at 84:14-85:14.  Section 3.8 is an example of this known approach, "defin[ing] a field of technology as relating to the field of technology of an existing class of IP, 'the Assigned Proprietary Property.'"  Stevens Rep. (Ex. 8) at ¶ 161; *see also id.* at ¶ 205.

Third, SkyePharma (now Pacira) use of "related to" in another agreement is consistent with RDF's interpretation of that same language in the 1994 Assignment and inconsistent Pacira's interpretation of "related to" as referring to a "patent family."  Specifically, a 2003 agreement with Enzon Pharmaceuticals states: "'SkyePharma Technology' shall mean … the DepoFoam injectable technology … including, without limitation, all Know-how and Patents ***that directly relate to any of the foregoing***."  2003 Enzon-Jagotec-Skye Agreement (Ex. 24) at Page 6 of 7.  There, Pacira specifies covered patents as those that "relate to" a field of technology, which is consistent with RDF's interpretation of Section 3.8 of the 1994 Assignment and inconsistent with a "patent family" interpretation.

Fourth, "[i]t is not a well-known or favored approach to connote inclusions of family members in IP Contracts by using the term 'related to' without further specific language."  Stevens Rep. (Ex. 8) at ¶ 163.  This is "because: (1) such use would not be apparent in light of the broader customary use of the term [and] (2) the availability well-known specific language used to capture the family concept."  *Id.*  This "well-known ***specific*** language" such as "divisions, continuations," etc., is also more precise.  *See id.*  For example, Section 1.2 of the 1994 Assignment includes

---

[16] RDF's interpretation is also consistent with the testimony of the two RDF representatives who were involved in the negotiation and drafting of both the 1994 Assignment and 2004 Amendment, Thomas Brorby and Brian Crozier.  *See* Brorby Dep. Vol. I (Ex. 15) at 152:2-10, 178:2-9; Brorby Dep. Vol. II (Ex. 16) at 293:11-18; Crozier Dep. Vol. I (Ex. 17) at 72:14-74:2.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

"continuations-in-part" in the list of included family patents, but Section 1.6 does not.  Pacira's interpretation of "related to" as meaning patent family leaves unclear whether "continuations-in-part" are included.  There is no reason to believe the drafters of the 1994 Assignment intended to use the vague term "related to" as Pacira asserts given they repeatedly used more precise, accepted language elsewhere in the same document to specify included family members.

> **2.    The '495 Patent Relates To The Same Field of Technology As Other Patents That Are Indisputably Part of Assigned Proprietary Property**

Comparing the '495 Patent to either or both of two other patents indisputably part of Assigned Proprietary Property confirms that the '495 Patent is related to the same field of technology as patents already part of Assigned Proprietary Property.

**'572 Patent.**  As discussed in Section II.A, above, the '572 Patent is a continuation of an application listed in Exhibit 1 to the 1994 Assignment.  The '572 Patent is titled "***Multivesicular liposomes*** with controlled release of ***active agents encapsulated*** in the presence of a hydrochloride" and describes its invention as "relat[ing] to the composition of synthetic ***multivesicular*** lipid vesicles or ***liposomes encapsulating biologically active substances*** and to methods for their manufacture and use."  '572 Patent (Ex. 3) at 1:18–21.  Thus, the '572 Patent relates to ***multivesicular liposomes encapsulating biologically active substances***.  *See id.*; *see also* Michniak-Kohn Rep. (Ex. 7) at ¶ 185.

**'838 Patent.**  As discussed in Section II.D, above, the '838 Patent is "covered by the Agreements," and is thus Assigned Proprietary Property. Dkt. No. 1 at ¶ 34; Dkt. No. 56 at 19, 23. The '838 Patent is titled "***Production of multivesicular liposomes***" and describes its invention as "methods of ***encapsulation of physiologically active substances***" using "***multivesicular liposome formulations***."  '838 Patent (Ex. 4) at 1:15-19.  Thus, the '838 Patent relates to ***multivesicular liposomes encapsulating biologically active substances***.  *See id.*; *see also* Michniak-Kohn Rep. (Ex. 7) at ¶ 65.

**'495 Patent.**  The '495 Patent is titled "Manufacturing of ***bupivacaine multivesicular liposomes***," and describes its invention as "relat[ing] generally to commercial manufacturing processes for making multivesicular liposomes," and specifically "making ***bupivacaine***

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

*encapsulated multivesicular liposomes* (MVLs)." '495 Patent (Ex. 6) at 1:8-10, 4:27-31.  Thus, the '495 Patent, like the '427 and '838 Patents, relates to *multivesicular liposomes encapsulating* bupivacaine, *a biologically active substance*.  *See id.*; *see also* Michniak-Kohn Rep. (Ex. 7) at ¶¶ 96-97, 187.

The '495 Patent technology relates to Assigned Proprietary Property because it relates to, i.e., overlaps with, the field of technology of the '572 and '838 Patents.  As Dr. Michniak-Kohn opines, "[t]he technology of the '495 Patent overlaps with the technology of the '572 Patent because both patents are related to the production of multivesicular liposomes that encapsulate a biologically active substance."  Michniak-Kohn Rep. (Ex. 7) at ¶ 188.  Likewise, the '495 Patent characterizes the earlier '838 Patent as another process for accomplishing the *same* task: *manufacturing "bupivacaine encapsulated multivesicular liposomes."*  '495 Patent (Ex. 6) at 4:28-35.[17]

Thus, there is no factual dispute that all three of the '572, '838, and '495 Patents "relate to" the same field of technology of *multivesicular liposomes encapsulating a biologically active substance*.  And, thus, under Section 3.8, the '495 Patent is Assigned Proprietary Property because it is related to the same field of technology as patents already part of Assigned Proprietary Property.

**C.** **The Agreements Cover Pacira's Sales of EXPAREL Under Article 1.1 of the 2004 Amendment Because Pacira Uses Non-Patent Proprietary Property in Manufacturing EXPAREL**

**1.** **The plain language of Article 1.1 confirms "Gross Revenue" includes revenues from Pacira's "use" of non-patent proprietary property**

Article 1.1 of the 2004 Amendment defines "Gross Revenues" to include "charges actually

---

[17] Pacira's technical expert, Dr. Ho, offers no rebuttal to the basic fact that all three of the '572, '838, and '495 Patents relate to the same field of technology of *multivesicular liposomes encapsulating a biologically active substance*.  Dr. Ho asserts only that the '495 Patent relates to "newly developed technology" compared to the '572 Patent and is "novel and non-obvious compared to the '838 Patent."  Ho Rebuttal Rep. (Ex. 10) at ¶¶ 66, 61.  But this analysis has no relevance to the pertinent question of whether a new patent is "related to" the field of technology of other Assigned Proprietary Property.  Pacira's licensing expert, Mr. Edwards, contradicts Dr. Ho's apparent position that Section 3.8 does not cover "newly-developed" improvements. *Compare to* Edwards Rep. (Ex. 11) at ¶ 29, n.10 (opining Section 3.8 covers "improvements").

collected by Skye [n/k/a Pacira]" for either of two separate categories:   The first category, as relevant to Sections III.A and III.B, above, encompasses sales "of a Product," where a "Product" "embodies an invention" claimed "in an Assigned Patent."  2004 Amendment (Ex. 2) at Art. 1.1; 1994 Assignment (Ex. 1) at § 1.7.   The second category, as relevant to this Section III.C, encompasses revenues from "***the use of Proprietary Property by Skye [n/k/a Pacira]*** or a third party."  These categories are independent, separated by the disjunctive "or."  2004 Amendment (Ex. 2) at Art. 1.1.

Unlike the first category, the second category is not limited to a "Product."  *See id.*  But that does not mean it is untethered to the IP covered under the Agreements.  Rather, this second category requires a different link: "***the use of Proprietary Property***."  *Id.*[18]  And, because "Proprietary Property" encompasses both patents and non-patent proprietary rights,[19] this second category encompasses use by Pacira of ***non-patent*** proprietary rights (e.g., trade secrets), including use in manufacturing products for sale.  *See id.*

Pacira offers no credible alternative interpretation of the plain meaning.  Rather, it asserts that the language "the use of Proprietary Property ***by Skye [n/k/a Pacira]*** or a third party" is "[p]roperly read" to cover ***only*** "the use of Proprietary Property ***by a third party***" and ***not*** "Pacira's own alleged use of 'Proprietary Property.'"  Pacira Third Supp. Rog. Resp. (Ex. 32) at 74.  This position lacks credibility on its face.  "Reading" the plain language "***by Skye [n/k/a Pacira]*** or a third party" to mean "by a third party ***and not by Skye [n/k/a Pacira]*** is not interpreting—it is rewriting.  Pacira has not pled rescission, nor is it entitled to such relief.

Pacira argues that its "interpretation" must be correct because "half the definition of 'Gross

---

[18] Further, even if Pacira were correct that it does not currently use any covered patents in manufacturing EXPAREL, the undisputed record and Pacira's own representations demonstrate that numerous unexpired patents covered by the Agreements remain, even if they are not currently used for a given process. *See* Section III.D, below.  That is all that is necessary for the Agreements to remain in force. *See* 1994 Assignment (Ex. 1) at §§ 4.3, 9.1; *see also* 2004 Amendment (Ex. 2) at Art. 1.4.

[19] The 1994 Assignment defines "Proprietary Property" as including not only "patent rights," but "developments," "techniques, methods, processes, apparatus, products, data, trade secrets, confidential information, … ***whether patentable or not***."  1994 Assignment (Ex. 1) at § 1.1.  The 2004 Amendment reinforces the inclusion of IP beyond patents, stating "Proprietary Property" includes "patent ***or proprietary rights***."  2004 Amendment (Ex. 2) at Art. 1.4.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

Revenues' would be rendered superfluous if the second category of charges were read to include production of Pacira's own EXPAREL® product."  Pacira Third Supp. Rog. Resp. (Ex. 32) at 74.  Even if Pacira were correct, that would not justify rewriting unambiguous language.  But Pacira is not correct.  As discussed above, the first category of Gross Revenues relates to "Products," while the second category covers "use" of Proprietary Property, including non-patent Proprietary Property and is, thus, different.  And, Pacira's litigation position that a product must also embody an Assigned Patent beyond use of non-patent Proprietary Rights contradicts Pacira's own 2011 correspondence, stating "the 2004 Assignment requires us to pay royalties on know-how alone."  2011.09.16 Ltr. (Ex. 42) at RDF_Pacira_00009996.

Pacira next argues that "Pacira collects charges from its sale of EXPAREL® product, not the use of some alleged Proprietary Property," apparently taking the position that charges collected "*from*" the use of Proprietary Property must mean charges collected "*for*" the use of Proprietary Property.  That is not what the Agreements say.  As discussed in Section III.C.2, below, Pacira's own witnesses and documents make clear that Pacira uses non-patent proprietary rights (trade secrets) to exclude others from the market and manufacture EXPAREL, and collects charges *from* that use when it sells EXPAREL.  Further, nothing in the language of the Agreements allows Pacira to avoid paying for those changes simply because they also qualify as "sales."  Multiple contractual bases for payment need not be mutually exclusive.

**2.      Pacira's own witnesses and documents demonstrate that Pacira uses non-patent proprietary property in manufacturing EXPAREL**

Pacira's documents and witness testimony make clear that Pacira extensively uses trade secrets, which are non-patent proprietary rights, in manufacturing both 45L and 200L EXPAREL.  Pacira stated in its 2021 10-K: "***Trade secrets*** play an important role in protecting our pMVL-based products," which include EXPAREL, and that "[t]he scale-up and commercial manufacture of pMVL-based … products involve ***processes, custom equipment and in-process and release analytical techniques*** that ***we believe are unique to us***."  2021 Pacira 10-K (Ex. 28) at RDF_Pacira_00001692.  Pacira further emphases how it takes steps to "protect our ***proprietary information, including our trade secrets and proprietary know-how***."  *Id.*



ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

1    Pacira similarly touted to its investors that these trade secrets helped maintain "market

2  exclusivity."  2022.05 Pacira Corporate Presentation (Ex. 31) at Page 2 of 2.  Mr. Stack, Pacira's

3  CEO, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Stack Dep. (Ex. 22) at 238:22-239:13 ("▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮").  Mr. Molloy, Pacira's General Counsel, testifying on the

9  same presentation, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Malloy

11 Dep. at 107:10-108:11; *see also id.* at 79:14-80:1 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮).

14    Mr. Turnbull, Pacira process engineer, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

17 Turnbull Dep. (Ex. 23) at 47:24-50:20.  Mr. Turnbull likewise ▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *Id.* at 53:10-

21 20.  Finally, Mr. Stack ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Stack Dep. (Ex. 22) at 238:1-14.

23    It is undisputed that EXPAREL meets the Amendment Technical Scope.  Dkt. No. 1 ¶¶ 40,

24 34.  Thus, the trade secrets and proprietary information underlying the "▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮" made in manufacturing EXPAREL are "proprietary rights" of Pacira within the

26 Amendment Technical Scope.  *See* 2004 Amendment (Ex. 2) at Art. 1.4.  As to the timing of these

27 proprietary rights, as discussed in Section III.A.2, above, Pacira's attempt to exclude IP arising

28 after 2004 is not credible in view of the explicit language "future" proprietary rights.  Further, as

discussed in Section III.B, above, Pacira's current manufacturing techniques are "related to the technology described in Exhibit 1" and, therefore, are also covered "trade secrets" or "confidential information" under Section 1.1 of the 1994 Assignment.

Regardless, even if Pacira were correct that only non-patent proprietary rights existing as of 2004 were included, Pacira has made no attempt to prove, and cannot demonstrate, that the "███████████████████████" made in manufacturing EXPAREL *exclude* proprietary rights developed by that time—and the record is to the contrary. Pacira's (then Skye) 2003 Form 20-F states at that time it was "currently working on DepoBupivacaine," now known as EXPAREL. 2003 Skye Form 20-F (Ex. 25) at Page 3 of 3. Thus, at least some trade secrets related to EXPAREL existed at that time. Pacira has informed the FDA that ██████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ 200 L Manufacturing Process (Ex. 26) at PACIRA_DNV-00314506. Specifically, ████████████████████████ ████████████████████████████████████████████ ████████████████████████ *Id.* Mr. Turnbull ████ ████████████████████████████████████████████ ████████████████████████████████████████████. Turnbull Dep. (Ex. 23) at 46:14-48:3. Again confirming Pacira's statements on ████████████ to the FDA, Mr. Turnbull testified that ██████████████████████████ ██████████████████████████████████████ *Id.* at 48:13-49:3.

**D.      RDF is Entitled to Summary Judgment on Pacira's Equitable Claims**

As explained in RDF's 12(c) Motion, Pacira's Complaint fails to meet the basic *Twombly* / *Iqbal* standard by not even addressing all the elements of any specific equitable doctrine, and Pacira's Count II should be resolved on that basis. Nothing in the intervening discovery period has advanced Pacira's equitable claims beyond general gripes of unfairness that fail to even address the elements of a specific doctrine. *See Sanders v. Sodexo*, 2015 U.S. Dist. LEXIS 96073, at *8–9 (D.

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

Nev. July 20, 2015) (dismissing a claim for failure to identify the violated public policy). "Nevada's public policy favor[s] the enforceability of contracts." *Lowe Enters. Residential Ptnrs., L.P. v. Eighth Judicial Dist. Ct.*, 118 Nev. 92, 100, 40 P.3d 405, 410 (Nev. 2002); *see also NAD, Inc. v. Dist. Ct.*, 115 Nev. 71, 77, 976 P.2d 994, 997 (Nev. 1999) ("parties are free to contract in any lawful matter"). Regardless, the undisputed factual record demonstrates why each equitable doctrine Pacira has referenced, even in passing, is inapplicable as a matter of law.

First, Pacira's Complaint references unconscionability. Dkt. No. 1 at ¶ 72. Unconscionability is a doctrine designed to address situations of uneven bargaining power where one party had no say in the contractual language, such as a clickwrap agreement. Thus, the ***required*** element of procedural unconscionability "often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554, 96 P.3d 1159, 1162 (Nev. 2004) (quoting *Burch v. Second Judicial Dist. Ct.*, 118 Nev. 438, 443, 49 P.3d 647, 650 (2002)). Here, the undisputed evidence demonstrates that the parties negotiated the 2004 Amendment from scratch, with Pacira providing the first draft and making the last edits. *See* Section II.B.[20] The "doctrine of unconscionability cannot be invoked by so sophisticated a party as [plaintiff] in reference to a contract so laboriously negotiated." *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1527 (9th Cir. 1987).

Second, Pacira asserts in interrogatory responses that "RDF's claims are barred as contrary to public policy ***to the extent RDF seeks to extend Plaintiff's royalty payment obligations beyond the patents relevant to 'DepoFoam Technology' defined in the 2004 Amendment***," citing *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964). Pacira Third Supp. Rog. Resp. (Ex. 32) at 24. Pacira's "to the extent" phrasing reveals why *Brulotte* does not help Pacira. "Under *Brulotte*, royalties may run until the latest-running patent covered in the parties' agreement expires." *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 454 (2015). Here, Pacira, in 2012, ██████████████████████
████████████████████████████████████████████████████

---

[20] Citing 2004.03.16 Ltr. (Ex. 38); 2004.04.01 Ltr. (Ex. 39); 2004.04.13 Ltr. (Ex. 40), 2004.04.13 Draft 2004 Amendment (Ex. 41); 2004 Amendment (Ex. 2).

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

1 ████████████████████████████████████████████ .  *See* Section II.D, above.  The '648

2 Patent does not expire until April 8, 2031.[21]  Thus, ████████████████████ , *Brulotte*

3 cannot apply until April 2031 at the earliest.  Further, Pacira raises its equitable claims as an

4 alternative assuming its contract claims are rejected.  Should the Court reject Pacira's contract

5 claims, the Court will have already, per Sections III.A and/or III.B, rejected Pacira's attempt to

6 exclude the '495 Patent from the Agreements, resulting in a second patent that renders *Brulotte*

7 inapplicable.

8         Third, in its interrogatory responses, Pacira asserts RDF's position in Section III.C, above,

9 "is improper in light of U.S. Supreme Court precedent such as *Brulotte* and its progeny for

10 attempting to extract royalties beyond the expiration date of a ***practiced patent***."  Pacira Third Supp.

11 Rog. Resp. (Ex. 32) at 78.  That is, Pacira asserts that *Brulotte* mandates not only that a patent

12 covered by the Agreements ***exist***, but that Pacira specifically ***practice*** that patent in relation to the

13 contracted payment trigger.  *See id.* at 78-79.  That is not the law.  A Supreme Court decision

14 preceding *Brulotte*, that *Brulotte* distinguishes, directly addresses and rejects Pacira's argument:

15 "***Petitioner cannot complain because it must pay royalties whether it uses Hazeltine patents or***

16 ***not***."  *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 834 (1950).  "What it

17 acquired by the agreement into which it entered was the privilege to use any or all of the patents

18 and developments as it desired to use them."  *Id.*  "If it chooses to use none of them, it has

19 nevertheless contracted to pay for the privilege …."  *Id.*  As discussed above, Pacira itself has

20 represented that the '648 Patent, which does not expire until 2031, is covered by the Agreements.

21 Further, even prior to the issuance of the '495 Patent, Pacira admitted that, "[a]s of December 31,

22 2020, there are over seven families of patents and patent applications relating to various aspects of

23 the DepoFoam delivery technology . . . with the last currently issued patent on the DepoFoam

24 delivery technology expiring in 2037 . . . ."  Pacira 2020 Form 10-K at 19-20.  That is all that is

25 required to make patent misuse inapplicable.

26         Fourth, the Agreements are neither unconscionable nor contrary to public policy.  Indeed,

27

---

28 [21] Citing 2012.02.02 Ltr. (Ex. 44) at RDF_Pacira_00010005; 2012.02.17 Email (Ex. 45) at RDF_Pacira_00008989; '648 Patent (Ex. 5).

1   given that Pacira is the one who determines whether to continue developing and commercializing

2   DepoFoam Technology and obtaining patents, it alone controls the duration of payments owed to

3   RDF under the objective criteria for determining the duration and expiration of Pacira's payment

4   obligations, as well as for determining the life of the contracts themselves.  *See* 1994 Assignment

5   (Ex. 1) at § 4.3; *id.* at § 9.1; *see also* 2004 Amendment (Ex. 2) at Art. 1.4.  Thus, Pacira's allegations

6   that the Agreements are, or could be, of "infinite" duration (*see* Dkt. No. 1 at ¶¶ 75, 78, 82) are

7   baseless.

8   **IV.**   **Conclusion**

9        For the foregoing reasons, RDF respectfully requests that the Court grant summary

10  judgment and dismiss Pacira's claims.

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202   Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com

DATED this 6th day of March, 2023.

**ALLISON MacKENZIE, LTD.**

By:  /s/ Karen A. Peterson
KAREN A. PETERSON, ESQ.
402 North Division Street
Carson City, NV 89703

DANIEL SCOTT LEVENTHAL, ESQ.
JAIME STARK, ESQ.
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX 77010-3095

JAMES S. RENARD, ESQ.
BRANDY S. NOLAN, ESQ.
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932

TALBOT R. HANSUM, ESQ.
ZACHARY WEGMANN, ESQ.
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701-4255

Attorneys for Defendant,
RESEARCH DEVELOPMENT FOUNDATION

- 31 -

1

## <u>CERTIFICATE OF SERVICE</u>

2   I hereby certify that that I am an employee of ALLISON MacKENZIE, LTD., and that on

3 this day, I electronically filed the foregoing document with the Clerk of the Court by using the

4 CM/ECF system, and that service will be accomplished on all counsel and persons requesting notice

5 by the Court CM/ECF system, which will send notification of such filing to their email addresses.

6   DATED this 6th day of March, 2023.

7

        By:  */s/ Nancy Fontenot*

8          NANCY FONTENOT

9

10

11

12

13

14 4874-1516-1429, v. 1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALLISON MacKENZIE, LTD.
402 North Division Street, P.O. Box 646, Carson City, NV 89702
Telephone: (775) 687-0202  Fax: (775) 882-7918
Email Address: law@allisonmackenzie.com