# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Pacira Pharmaceuticals, Inc., | Case No. 2:21-cv-02241-CDS-NJK |
| Plaintiff | **Order Resolving Pacira's Motions in Limine to Exclude Defendant's Expert Witnesses** |
| v. | |
| Research Development Foundation, | [ECF No. 228, 246, 232, 247] |
| Defendant | |

Plaintiff Pacira Pharmaceuticals, Inc. sues defendant Research Development Foundation ("RDF") in this declaratory-judgment action arising out of a long-standing assignment agreement between the parties. Pacira filed two motions in limine seeking to exclude the testimony of RDF's expert witnesses Dr. Stevens and Dr. Michniak-Kohn. Pacira Motion re: Stevens, ECF No. 228 (sealed); ECF No. 246 (unsealed); Pacira Motion re: Michniak-Kohn, ECF No. 232 (sealed); ECF No. 247 (unsealed). RDF opposes the motions. Opp'n to Stevens MTE, ECF No. 266 (sealed); ECF No. 276 (unsealed)[1]; Opp'n to Michniak-Kohn MTE, ECF No. 264. Pacira filed a reply to RDF's opposition to its motion to exclude Michniak-Kohn's testimony. Pacira Reply re: Michniak-Kohn, ECF No. 289 (sealed); ECF No. 297 (unsealed).[2] For the reasons described herein, I grant in part and deny in part Pacira's motions in limine to exclude the testimony of Dr. Stevens and Dr. Michniak-Kohn.

## I.    Legal standard

Motions in limine are a well-recognized judicial practice authorized under case law. *See Ohler v. United States*, 529 U.S. 753, 758 (2000). The court's power to rule on motions in limine stems from "the court's inherent power to manage the course of trials." *Luce v. United States*, 469

---

[1] RDF also filed a duplicate unsealed redacted version of its opposition to this motion at ECF No. 268. The court cites to ECF No. 276 throughout this order, and ECF No. 268 is stricken as a duplicate.
[2] Also for ease of reference, the court cites to the unsealed redacted versions at ECF No. 246 and ECF No. 247.

U.S. 38, 41 n.4 (1984). Trial courts have broad discretion when ruling on such motions. *See Sweeney v. Chang*, 2019 WL 1431583, at *2 (C.D. Cal. Mar. 26, 2019) (citing *Jenkins v. Chrysler Motor Corp.*, 316 F.3d 663, 664 (7th Cir. 2002)). Regardless of the court's initial decision on a motion in limine, any issues can be revised during trial. *See* Fed. R. Evid. 103, Advisory Committee's Note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41–42); *accord Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 479 F.3d 1330, 1338 (Fed. Cir. 2007) ("[I]n limine rulings are preliminary in character.").

Federal Rule of Evidence 702 allows for expert testimony, subject to certain requirements and conditions. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The Rule 702 inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993) (*Daubert I*). The district court must also "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact .... Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing *Daubert I*, 509 U.S. at 591–93). *Daubert I*'s "gatekeeping obligation" applies not only to testimony based on 'scientific knowledge' but also to testimony

based on 'technical' and 'other specialized' knowledge." *Kumho Tire Company v. Carmichael*, 526 U.S. 137, 141 (1999). "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

## II.  Discussion

As background, the parties do not dispute that "whether Pacira's New Patents 'relate to the Assigned Proprietary Property' under Section 3.8 of the 1994 Agreement" is an issue to be decided at trial. ECF No. 247 (citing ECF No. 178 at 6); ECF No. 264 at 4 (citing Summ. J. Order, ECF No. 152 at 17–18). Pacira also asserts that their claim for declaratory judgment of unenforceability, specifically identifying unenforceability on the grounds of unconscionability and public policy, together with RDF's competing request for declaratory relief on the same, is also a live issue for trial. ECF No. 247 at 6. I agree.[3] With that I mind, I resolve the two motions in limine to exclude as follows:

### A.  Pacira's motion in limine to exclude the testimony of Dr. Stevens

Pacira moves to exclude the testimony of RDF's purported expert Dr. Ashley Stevens's testimony on the ground that some of his opinions rely on improper contract interpretation, some of his opinions are irrelevant, and some of his opinions are on subject areas in which he lacks the requisite expertise. I address each in turn.

#### 1.  *Interpretation of Agreements and "standards and practices" testimony*

Pacira begins by challenging Stevens's opinions for impermissibly interpreting the parties' agreements and their intent under the guise of permissible standards and practices testimony. ECF No. 246 at 12. Specifically, Pacira objects to parts of Stevens's report in which he

---

[3] Despite RDF's new assertions that the unconscionability issue is no longer live, it is. *See* Pretrial Order, ECF No. 170 at 17 (asserting that "[w]hether any payment-related terms or provisions of the parties' Agreements are unconscionable, against public policy, or otherwise void or unenforceable" is a contested issue of law). RDF itself previously argues that this issue was contested, making its new assertions all the more puzzling. *See* RDF's Answer, ECF No. 18 at 27 (seeking a declaration that "Agreements and the terms therein are valid, enforceable, and not unconscionable or in violation of public policy.").

3

"opines that both Section 3.8 of the 1994 Agreement and Article 1.4 of the 2004 Amendment are 'consistent with an objective to define a Field of Technology clause with no temporal limitations[.]'" *Id.* (quoting Stevens Rep., ECF No. 246-3 at ¶¶ 186–91, 204–08). His opinions here are purportedly based on "IP industry" standards, but Pacira argues that Stevens could not "identify any terms in the Agreements that have a specialized meaning in the 'IP industry.'" *Id.* at 12–13 (citing Stevens Dep. Tr., ECF No. 246-4 at 73:12–17; 83:8–17). It also argues that Stevens improperly opined about the parties' intent in reaching the agreements. *Id.* at 14 (citing ECF No. 246-4 at 40:15–22). Additionally, Pacira argues that Stevens's standards and practices testimony should be barred because he applied no reliable methodology, merely selecting twenty-two licenses on which to base his opinions without providing explanation. *Id.* at 14–16.

In response, RDF argues that Stevens's opinions are merely trade usage testimony, which the Supreme Court of Nevada has allowed. ECF No. 276 at 13–14 (citing *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 367–68 (Nev. 2013)). In *Galardi*, the Supreme Court of Nevada held that, when interpreting an ambiguous contract, a court may look to usage and industry custom. *See Galardi*, 301 P.3d at 367–68.

But this argument is irrelevant because I already determined that the contract between the parties is unambiguous.[4] Even though interpreting contracts and making legal conclusions are the sole responsibility of the court, *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999), no such interpretation here is necessary because the contract is unambiguous, *see, e.g., Golden Bear Ins. Co. v. Evanston Ins. Co.*, 2021 WL 2481667, at *4 (D. Nev. June 17, 2021) (describing as "settled law" that custom and practice testimony are not admissible for the purpose of interpreting an unambiguous contract). So even accepting RDF's arguments as true, Stevens's

---

[4] The summary judgment order states "**I find no ambiguity in either of the agreements** and note that 'ambiguity does not arise simply because the parties disagree on how to interpret their contract.'" ECF No. 152 at 8 n.4 (citing *Galardi*, 301 P.3d at 366) (emphasis added). Further, I specifically addressed the specific terms of the contract and addressed that RDF's arguments improperly attempted to "broaden the scope of § 3.8's inquiry by importing phrases ("same field of technology") that do not exist in the contract language." *Id.* at 17. While the court must decide what "relate to" means in this case, that does not render the contract ambiguous.

opinions regarding standards and practices in the "IP Industry" or any opinions in which Stevens purports to interpret the agreements are irrelevant and are therefore excluded.[5]

### 2. *Stevens's opinion that the Agreements are not "harsh and unreasonable"*

Pacira argues that Stevens's opinion that the Agreements are not "harsh and unreasonable" mirrors a legal conclusion and should therefore be excluded. ECF No. 246 at 17–19. Pacira further argues that the definition of substantive unconscionability in contracting is one that results in "unfair or unreasonably harsh contractual term[s]." *Id.* (quoting 8 Williston on Contracts § 18:10). It argues that Stevens's statement that "the Amendment and the Agreements as a whole were at the time of their execution and are today fair and reasonable IP contracts for both parties from an economic and commercial point of view" is directly tethered to the legal standard for Pacira's unconscionability defense. *Id.* (quoting ECF No. 246-3 at ¶ 248 and citing ECF No. 246-3 at ¶ 212). In response, RDF argues that Dr. Stevens was not drawing legal conclusions but instead merely opining on the agreements' economic and commercial consequences. ECF No. 276 at 22–23.

Under Nevada law, "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." Nev. Rev. Stat. § 104.2302(2). "Contractual unconscionability involves mixed questions of law and fact." *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (2004), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32 (2018)).[6] "[A]n expert witness cannot

---

[5] This ruling includes the parts of Stevens's report that outside of the "contract conventions" opinion, such as his opinions about the meaning of the contract in the "Economic and commercial consequences of the parties' agreements" section of his opinion. *See* ECF No. 246-3 at ¶¶ 213–26.

[6] I take exception to Pacira's mischaracterization of this standard. In its motion, Pacira stated that "[u]nder Nevada law, whether 'a contractual provision is unconscionable is a question of law' for the Court." ECF No. 246 at 18 (quoting *D.R. Horton*, 96 P.3d at 1162). The sentence Pacira quoted begins: "[w]hether, given the trial court's factual findings, a contractual provision is unconscionable is a question of law subject to de novo review." *D.R. Horton*, 96 P.3d at 1162. This clearly establishes a question for which there is a *mixed* question of law and fact, as the Supreme Court of Nevada stated *two sentences prior*. *See id.* ("Contractual unconscionability involves mixed questions of law and fact."). Pacira is cautioned

give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original). What Stevens intends to testify about, specifically whether the contract is "fair and reasonable," is undoubtedly a question of law in this context, and he is impermissibly reaching a conclusion on this issue. Any such conclusions, but only the conclusions themselves contained in ECF No. 246-3 at ¶¶ 212 and 248, are excluded. I note, however, that although I have determined that his "fairness" conclusions are impermissible legal conclusions, I have not excluded the remainder of Stevens's testimony about *how* he reached those fairness conclusions.

### 3. Relevance of Stevens's opinions

Pacira argues at considerable length that Stevens's opinions are irrelevant. ECF No. 246 at 19–23. It argues that only eighteen paragraphs in his 248-paragraph report involve the "sole" remaining issue. *Id.* at 19. It argues that his opinions mainly focus on two elements of this case no longer in question—applicability of Section 1.4 of the 2004 Amendment and the "field of technology" theory. *Id.* at 19–22. In response, RDF contends that Pacira does not address why most of the 230 allegedly irrelevant paragraphs are, in fact, irrelevant. ECF No. 276 at 21. RDF also refutes the supposed irrelevance of Stevens's references to Section 1.4 of the 2004 Amendment, arguing that "the terminology used in Section 1.4 exemplifies a 'description of the technical scope of the applicable field of technology,' which is just one of 'multiple ways' to approach what Dr. Stevens labeled as the 'field of technology' building block or objective." *Id.* at 22 (quoting ECF No. 246-3 at ¶¶ 159–62). Therefore, there seems to be relative agreement that the primary relevance objection centers around Stevens's "field of technology" opinions. Because I have already decided that "field of technology" is not an applicable interpretation of the "relate to" trial question, I agree that Stevens's testimony about "field of technology" is irrelevant. However, I do not go so far as to exclude his entire testimony. Although his testimony directly

---

that this sort of partial representation of what the case actually states is misleading and unacceptable. *See* Fed. R. Evid. 11.

discussing "field of technology" as a valid interpretation of the "related to" question is excluded, *see, e.g.*, ECF No. 246-3 at ¶¶ 159–68, I find that Stevens's remaining opinions may still meet the low bar for relevance at trial. *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) ("The relevancy bar is low[.]"). RDF can, if it so chooses, still elicit testimony from Stevens about his opinions regarding the remaining "related to" question.

Pacira next targets Stevens's statement that "a deal is a deal." ECF No. 246 at 22–23. It states that this "opinion" is unsupported and irrelevant. *Id.* (citing *OPS 2, LLC v. Cnty. of Clark*, 2012 WL 424856, at *5 (D. Nev. Feb. 9, 2012)). In response, RDF argues that the statement, and Stevens's corresponding opinions, form the basis for his statements that the contract is "fair and reasonable."

Expert testimony is properly excluded where it "would not be helpful to the judge in making [their] decision and offers nothing more than what defense counsel could argue during closing arguments." *OPS 2*, 2012 WL 424856, at *5. The entire section of his opinion entitled "a deal is a deal" (¶¶ 236–42), as Stevens admitted at deposition, does not involve him "making any statements or . . . offering any opinions with respect to the particular agreements in this case[.]" ECF No. 246-4 at 250:7–11. As discussed previously, his "fair and reasonable" conclusion, which this testimony RDF states is intended to support, is excluded anyway. I find that Stevens's statements in his "a deal is a deal" section, which include "[w]hen two parties negotiate a deal, including an IP contract, each party is balancing its needs and interests against the needs and interests of its counterparty[,]" offers no useful insight to assist the trier of fact, and is argument better suited for a closing arguments than an expert's testimony. ECF No. 246-3 at ¶ 237. Therefore, ¶¶ 236–42 are irrelevant and therefore excluded.

Pacira argues next that Stevens's opinions "that merely provide a one-sided summary of extrinsic evidence and other facts should be independently excluded" as not based on specialized knowledge and therefore unhelpful to the trier of fact. ECF No. 246 at 23. As a threshold matter, Pacira lists ¶¶ 82–114, which summarize correspondence between the parties,

7

as part of the report they wish to exclude. *Id.* RDF has agreed to the exclusion of this section of Stevens's report. ECF No. 276 at 17 ("[T]o narrow the disputes RDF agrees to withdraw Paragraphs 82–114 of Dr. Stevens' Report."). Stevens is therefore excluded from testifying about the content of paragraphs 82–114 of his report. As to the remaining objections (to ¶¶ 116–24, 126–30, 133, 136–42, 226–35, 247), Pacira argues that these provide only background information that "simply recite . . . the timeline of events [Stevens] deems relevant, and Pacira's patent-related activities[.]" ECF No. 246 at 23 (citing *Great W. Air, LLC v. Cirrus Design Corp.*, 2019 WL 6529046, at *3 (D. Nev. Dec. 4, 2019) ("Expert testimony aids the trier of fact "when it provides information beyond the common knowledge of the trier of fact.")).

Rule 702 provides that expert testimony must rest on "sufficient facts or data," and Rule 26(a)(2)(B) requires an expert report to disclose the "facts or data considered by the witness in forming them." *See* Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(B)(ii). An expert, therefore, can summarize the facts that form the basis for their decision. Additionally, an expert's testimony need only "logically advance[] a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (*Daubert II*). The facts Stevens discusses in the listed paragraphs could provide some useful background information to his opinions. He covers the sale history of EXPAREL® patents and Pacira's stock history (¶¶ 116–24), describes the provisions of the Amendment (¶¶ 126–30, 133), the conflict between Pacira and eVenus (¶¶ 136–42), "[w]hether there will be future patents (¶¶ 226–31), Pacira's sale of EXPAREL® products (¶¶ 232–35), and "the circumstances facing the parties in 2004 when the Amendment was negotiated and signed" (¶ 247). ECF No. 246-3. In erring on the side of admissibility, I find that these opinions should not be excluded. However, because these do not serve any function in answering the "related to" question directly, testimony that provides background information only (namely ¶¶ 116–24, 126–30, 133, 136–42, 226–35, and 247) should be limited during trial.

### 4. *Stevens's qualifications to discuss the economics of the agreements*

Pacira argues that Stevens's opinions as to the "economics and commercial consequences" of the Agreements should be excluded because he lacks particularized knowledge, skill, experience, training, or education in the field of economics or finance. (ECF No. 28 at 24). In response, RDF argues that Stevens possesses

> "nearly 40 years of experience structuring transactions in the early stage biotechnology space." [ECF No. 246-3] at ¶ 22. He "negotiated [him]self, or supervised the negotiation by others of, over 300 licenses," including acquisitions of IP. *Id.* at ¶ 7; *e.g.,* [ECF No. 246-4] at 85:16-22. And he has "written and taught extensively on various aspects of licensing, technology valuation, technology transfer and technology commercialization." [ECF No. 246-3] at ¶ 14.

ECF No. 276 at 24. RDF further argues that even though he does not possess a background in finance or economics, "Federal Rule of Evidence 702 'contemplates a broad conception of expert qualifications' that Dr. Stevens' decades of experience in the numerous aspects of technology licensing satisfies." *Id.* at 25 (quoting Fed. R. Evid. 702 and citing *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). Thus, RDF contends that his experience is sufficient and that Pacira's objections go only toward the strength of his credentials. *Id.* (citing *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998)).

I start by recognizing that many of the paragraphs for which Pacira seeks exclusion have already been excluded on other grounds. E.g., ¶¶ 120–21, 142, 230–35. As for the remaining paragraphs—¶¶ 115, 125, 131–32, 134–35, 243 and 246—I agree with Pacira to the extent that Stevens seeks to testify about the economics or finance of the RDF-Pacira deal. Statements like "essentially all of the current market capitalization of Pacira can be attributed to EXPAREL[,]" ¶ 125; "RDF's agreement to reduce its percentage of Other Consideration in the Amendment therefore constituted a substantial economic benefit to SkyePharma[,]" ¶ 131; and that the Agreements have "been a major financial windfall to Pacira's shareholders," ¶ 246, all rely on an area of expertise that Stevens does not have. Stevens claims to be familiar with some aspects of the monetary components of licensing agreements from his decades of experience so Pacira's

request to exclude his testimony on this subject is denied. But Stevens's statements that describe the specific economics of the RDF-Pacira deal, for which he lacks the requisite expertise, are excluded because any testimony regarding the specific economics or finances of RDF or Pacira or the details or effects of the RDF-Pacira deal is beyond the scope of his expertise. Therefore ¶¶, 125, 131–32, 134–35, 243 and 246 of his report are excluded to the extent that they involve discussion of economics or finance in relation to Pacira or RDF, are excluded. I see no reason to exclude ¶ 115, which merely states "I understand that this dispute concerns EXPAREL a formulation of bupivacaine" (ECF No. 246-3 at ¶ 115) so that request is denied.

B. **Pacira's motion in limine to exclude the testimony of Dr. Michniak-Kohn**

RDF's purported expert Bozena Michniak-Kohn provided an expert report first delving into the "Amendment Technical Scope" covering Pacira's new patents and then conducting a "Pacira Patent Technology Area Analysis." Michniak-Kohn Rep., ECF No. 247. Pacira moves to exclude both these parts of Michniak-Kohn's testimony arguing that they are both essentially designed to argue the "field of technology" claim already decided by this court.

1. *Relevance of Michniak-Kohn's testimony on the "Amendment Technical Scope"*

In her written report, Michniak-Kohn first explored the "Amendment Phrase" ("the phrase"), which she defined as "microscopic, spherical particles composed of multiple nonconcentric aqueous chambers encapsulating the biologically active substance therein in the presence or absence of any acid or salt or other compound." ECF No. 247-4 at 19. This "phrase" is borrowed from the language of the 2004 Amendment Agreement. *See id.* ("I understand that the Amendment Phrase appears in a 2004 Amendment Agreement entered into by RDF and Skye, which is now known as Pacira."); *see also* 2004 Amendment Agreement, ECF No. 247-3 at § 1.4 ("'Proprietary Property' shall mean [Pacira]'s multivesicular liposome DepoFoam technology which consists of microscopic, spherical particles composed of multiple nonconcentric aqueous

chambers encapsulating the biologically active substance therein in the presence or absence of any acid or salt or other compound.").

In its motion, Pacira begins by arguing that Michniak-Kohn's opinions on the Amendment Technical Scope relate only to § 1.4 of the 2004 Amendment, not § 3.8 of the 1994 Agreement, which is the only element of the Agreement remaining at issue for trial. ECF No. 247 at 9–10. It contends that RDF now tries to improperly shoehorn, by way of argument, that Michniak-Kohn's 2004 Amendment § 1.4 analysis applies to the remaining 1994 Agreement § 3.8 analysis because her § 1.4 analysis shows evidence of "relatedness." *Id.* at 10–11. It also argues that RDF's new theory, putting a "Section 3.8 gloss" on Michniak-Kohn's opinion constitutes an improper undisclosed expert opinion because she never disclosed this position prior to the close of discovery. *Id.* at 11. In its response, RDF argues that Michniak-Kohn's phrase, though perhaps borrowed from the § 1.4 amendment, does not die with § 1.4; rather she used it as a useful starting point with which to measure the degree of relatedness of the patents. ECF No. 264 at 5–6. It points to places where she compares in detail elements of the '838 Patent and the '495 Patent using the phrase. *Id.* RDF also contends that Michniak-Kohn's testimony remains unchanged: "Dr. Michniak-Kohn maintains her opinion that at least one claim of each of the patents discussed in her Report covers multivesicular liposomes and the Technical Scope, which, as explained above, is relevant to the trial issue of relatedness of the Patents-at-Issue." *Id.* at 7.

Although her testimony does not necessarily focus on § 3.8, I agree with RDF that it remains relevant to the question of relatedness. Her use of a definition from a since-resolved part of this dispute does not necessarily mean her analysis relies solely on § 1.4. In fact, she conducts an analysis of MVLs, albeit a broad one, noting that "at least one claim of each of Pacira's patents discussed below covers the Amendment Technical Scope." ECF No. 247-4 at 22. This analysis could assist me as the trier of fact in understanding the relatedness of assigned proprietary property. I further agree this is neither a new theory nor a changed opinion. Although parts of

11

Michniak-Kohn's testimony may no longer be as relevant as they were when interpretation of § 1.4 remained a live issue, I do not see how her comparison of the various MVL patents serving a slightly different function amounts to an undisclosed position. Therefore, as to this argument, Pacira's motion to exclude Michniak-Kohn's testimony is denied. I note, however, that Michniak-Kohn's testimony will only be permitted to the extent that she is able to assist the court in answering the "related to" question. She will not be permitted to propound about relatedness under the rejected "field of technology" theory.

### 2. Reliability of Michniak-Kohn's Methodology

Pacira next argues that Michniak-Kohn's "Amendment Technical Scope" opinions should be excluded because they are not based on reliable methodology. It argues that the only analysis Michniak-Kohn conducted was considering "anything" that used the same words as the phrase. ECF No. 247 at 12–13. This, Pacira contends, is "ipse dixit" word matching and involves no scientific analysis. *Id.* at 13 (citing *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) ("Experts must follow some discernable methodology, and may not be 'a black box into which data is fed at one end and from which an answer emerges at the other.'")). In its response, RDF argues that Michniak-Kohn does analyze her data, using the elements of the phrase to show the similarity in Pacira's statements to conclude that each Pacira patent has a claim within the Amendment Technical Scope and offering interpretations of terms in Pacira's public statements. ECF No. 264 at 8.

I find no issue with Michniak-Kohn's methodology. The objection Pacira raises—about her having done insufficient analysis—is better reserved for cross-examination. *See, e.g., Glam & Glits Nail Design, Inc. v. iGel Beauty, LLC*, 2022 WL 3012522, at *12 (C.D. Cal. June 24, 2022) (finding that a purported expert's failure to examine a patent file history would be "better addressed through cross-examination rather than exclusion of her opinion altogether."). Therefore, as to this argument, Pacira's motion to exclude Michniak-Kohn's testimony is denied.

### 3. Relevance of Michniak-Kohn's "Pacira Patent Technology Area Analysis"

The final piece of Michniak-Kohn's report is her "Pacira Patent Technology Area Analysis," in which she sought to "identify any overlap of these technology areas between the '495 and '572 patents. ECF No. 247-4 at 64. Pacira argues that her analysis is entirely based on RDF's rejected "field of technology" argument and now serves no relevant purpose. ECF No. 247 at 14 (citing *Allstate Prop. & Cas. Ins. Co. v. Mirkia*, 2014 WL 5469205, at *2 (D. Nev. Oct. 28, 2014) (excluding expert testimony as "irrelevant to the remaining issues in this case" because "[p]reviously, the Court granted summary judgment in [plaintiff]'s favor regarding the bad faith claims" and expert's testimony only pertained to bad faith claims)). In its response, RDF attempts to resuscitate its "field of technology" argument. ECF No. 264 at 8–9. As has been stated previously, this argument was rejected in the order on the motion for summary judgment. Order resolving mots. in lim., ECF No. 306 at 6. RDF does, however, also argue that "Pacira oversimplifies Dr. Michniak-Kohn's analysis showing that claims of the '572 Patent and the '495 Patent recite the same steps for producing multivesicular liposomes that encapsulate a biologically active substance" and Pacira "does not and cannot argue that this evidence is irrelevant to the trial issue of relatedness between the '572 Patent and the '495 Patent." ECF No. 264 at 8–9.

Both parties appear to be in agreement, as am I, that the primary purpose of this part of Michniak-Kohn's report is in service of the "field of technology" argument. As this has been rejected, Michniak-Kohn is not permitted to opine about "field of technology," as this is no longer an issue to be discussed at trial. However, I do not exclude this testimony entirely, as Michniak-Kohn still provides enough information in this section to address the specific relatedness question in comparing '495 and '572. Therefore, Pacira's motion to exclude Michniak-Kohn's testimony is granted in part and denied in part as set forth above.

### 4. *Whether Michniak-Kohn's summaries are improper expert opinions*

Pacira argues that in Sections V.E and V.F, Michniak-Kohn improperly provides one-sided summaries of information in a series of "I understand . . ." statements that are "merely . . . statement[s] of fact that do[] not require an expert opinion" and should be excluded. ECF No. 247 at 15 (quoting ECF No. 247-4 at 13–18 and *Lopez v. Cardenas Mkts.*, LLC, 2023 WL 3319214, at *3 (D. Nev. May 9, 2023)). In response, RDF argues that her "I understand . . ." statements are there to support her determination as to what constitutes a multivesicular liposome and an expert is allowed to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed[.]" ECF No. 264 at 9–10 (quoting Fed. R. Evid. 703). I find that her summaries, which include descriptions of multivesicular liposomes that she then uses to assist her in comparing patents, are not improper so Pacira's motion to exclude Michniak-Kohn's testimony as argued at ECF No. 247 at 15 is denied.

### III. Conclusion

It is ordered that Pacira's motions in limine **[ECF No. 228/ECF No. 246, ECF No. 232/ECF No. 247] are GRANTED in part and DENIED in part** as set forth in this order.

It is further ordered that **[ECF No. 268] is stricken** as a duplicate.

Dated: September 17, 2024

_____
Cristina D. Silva
United States District Judge